**Darrel A. MAZZARI, Plaintiff–Appellant,**

**and**

**Michael T. Sheedy, Plaintiff–Appellant,**

v.

**James E. ROGAN, Director, Patent and Trademark Office, Defendant–Appellee.**

No. 02–1269.

United States Court of Appeals, Federal Circuit.

March 17, 2003.

Darrel A. Mazzari, of Grafton, WI, pro se.

Michael T. Sheedy, of Grafton, WI, pro se.

John M. Whealan, Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, for defendant-appellee. With him on the brief were Sydney O. Johnson, Jr. and Raymond T. Chen, Associate Solicitors.

Before MAYER, Chief Judge, NEWMAN and BRYSON, Circuit Judges.

MAYER, Chief Judge.

Darrel A. Mazzari and Michael T. Sheedy appeal the judgment of the United States District Court for the District of Columbia, *Mazzari v. Dir., Patent and Trademark Office,* 99–CV–142 (D.D.C. Dec. 20, 2001), on summary judgment in favor of the United States Patent and Trademark Office ("PTO") that Mazzari and Sheedy's claims are unpatentable. Because no genuine issue of material fact as to the grounds of rejection exists and the district court correctly held the claims obvious and anticipated in light of the prior art, the judgment is affirmed.

## Background

Mazzari and Sheedy (hereinafter "Mazzari"), smelt fishermen concerned with the zebra mussel infestation of Lake Michigan, developed and filed United States Patent Application Serial No. 07/869,017 ("the '017 application") on April 15, 1992. The '017 application is directed to an underwater circuit that generates an acoustic wave signal of such magnitude and frequency as to vibrate the shell of the zebra mussel until it breaks, thereby killing the animal. Claims 13, 15–17, 25, 27, and 28 are all of the pending claims. Claim 13, the broadest claim, recites:

13. A method for killing, repelling, or inhibiting reproduction of non-self-propelled mussels, comprising the steps of:

generating an acoustic wave by providing an oscillator;

generating from the oscillator an output signal with one or more distinct frequencies;

adjusting each frequency of the output signal with a control;

amplifying the output signal with an amplifier;

and converting the amplified signal into a variable acoustic wave, wherein the frequency of the output signal is adjusted to provide at least one frequency which generates an acoustic wave injurious to the non-self-propelled mussels by resonating the mussels; and

transmitting the acoustic wave underwater to a location where it is desired to exterminate, repel, or inhibit reproduction of non-self-propelled mussels.

The examiner finally rejected all pending claims as obvious under 35 U.S.C. § 103 over PCT Application Serial No. 92/02926 to Bryden ("Bryden") in view of United States Patent No. 4,922,468 to Menezes ("Menezes"). The examiner also found that the claims were anticipated under 35 U.S.C. § 102 by Kowalewski et al., Ontario Hydro Research Division Report No. 91–76–K (Apr. 11, 1991) ("Kowalewski").

Mazzari appealed the examiner's rejection to the board and argued that the examiner's findings with regard to the Bryden and Menezes references were incorrect. He also argued that two separate declarations that he had filed established an actual reduction to practice date by the end of 1990, eliminating both the Kowalewski and Bryden references.

The board found that the declarations were insufficient to show an actual reduction to practice because they did not establish that Mazzari had performed a method that killed, repelled or inhibited reproduction or growth of non-self-propelled mussels. The board sustained the examiner's obviousness rejection, finding that Bryden discloses a method for killing zebra mussels using a water-borne acoustic wave; and that Menezes teaches an acoustical wave generator that includes a signal generator, a power amplifier, and a transducer. The board further found that it would have been obvious to one of skill in the art to substitute Bryden's plasma sparker with the acoustical wave generator taught by

Menezes because it is more efficient. As to Kowalewski, the board did not sustain the examiner's rejection because there was insufficient evidence, at that time, to determine if Kowalewski was published before Mazzari's filing date.

Rather than appeal the board's unfavorable decision directly to this court, Mazzari chose to challenge it in the United States District Court for the District of Columbia pursuant to 35 U.S.C. § 145. Relying on the findings of the board regarding Bryden and Menezes, as well as several additional references that were discovered after the board's decision, the PTO moved for summary judgment. In response, Mazzari submitted the declaration of Professor Martin E. Boraas, a zoologist who had witnessed the demonstration of a plasma sparker allegedly similar to Bryden's device. Boraas declared that one of skill in the art would not have combined Bryden and Menezes based upon what he had seen. He also said that it is improper to combine the references because they cannot be physically combined. Taking the Boraas declaration into consideration, the district court denied the PTO's motion for summary judgment without prejudice, and stated that it would consider a supplemental motion for summary judgment after the PTO had an opportunity to depose Boraas and the parties could conduct additional discovery.

The PTO deposed Boraas who admitted that he was not one of ordinary skill in the art of eliminating zebra mussels, and the device on which he based his declaration was not the Bryden device. The PTO also submitted the declaration of its own expert, Renata Claudi, who was the senior scientist at Ontario Hydro Generation for 13 years. Claudi declared that Kowalew-

ski and Gottfried Breitig, "The Use of Ultrasound in the Eradication of Larvae" (1965) (translation of relevant portion on file with the court) ("Breitig"), one of the newly discovered prior art references, anticipated all of the claims, and supported the board's finding that the claims would have been obvious to one of skill in the art over Bryden in view of Menezes. The PTO also submitted the declaration of Nancy Fish, the librarian at the Ontario Power Generation Resource Center, who stated that Kowalewski was indexed, catalogued, and available to the public in June of 1991. Based upon this new evidence, as well as the references previously considered by the board, the PTO filed a supplemental motion for summary judgment.

Rather than respond to the arguments advanced by the PTO, despite having been ordered to do so, Mazzari filed an affidavit and a motion to suppress the PTO's supplemental motion for summary judgment.* The district court denied the motion to suppress and after considering the merits, granted the PTO's motion for summary judgment finding the claims anticipated by Kowalewski and obvious over Bryden in view of Menezes. Mazzari appealed to this court and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(C).

*Discussion*

■ An applicant who wishes to challenge the board's decision can do so by either appealing directly to this court, 35 U.S.C. § 141, or by filing a civil action to obtain a patent in the United States District Court for the District of Columbia, 35 U.S.C. § 145. Section 145 provides in relevant part: "[A]n applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal

---

* Sheedy, a lawyer, filed numerous confusing documents which the district court characterized and treated as best it could, as do we. Because of Sheedy's actions the court referred him to appropriate bar disciplinary authorities.

under section 134(a) of this title may ... have remedy by civil action against the Director in the United States District Court for the District of Columbia.... The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, as the facts in the case may appear...." 35 U.S.C. § 145 (2000). The district court has the power to set aside any ruling refusing a patent. *Hoover Co. v. Coe,* 325 U.S. 79, 85, 65 S.Ct. 955, 89 L.Ed. 1488 (1945) (discussing 35 U.S.C. § 63, the precursor to section 145.).

▪ A section 145 review is distinct from a section 141 appeal in that it affords the applicant an opportunity to present additional evidence or argue the previous evidence afresh, either by simply relying upon the record below or by reintroducing the same evidence through alternative means such as live testimony. "While the evidentiary record before the Board serves as the 'evidentiary nucleus' of the district court proceeding in a section 145 action, the parties are entitled to submit additional evidence." *Gould v. Quigg,* 822 F.2d 1074, 1076, 3 USPQ2d 1302, 1303 (Fed.Cir. 1987) (citing *Fregeau v. Mossinghoff,* 776 F.2d 1034, 1037, 227 USPQ 848, 850 (Fed. Cir.1985)). If new evidence, or evidence that was previously submitted is supplemented or introduced through live testimony, the district court takes on the role of fact-finder and may need to make factual findings. *Gould,* 822 F.2d at 1077, 3 USPQ2d at 1303–04, citing, *Fregeau,* 776 F.2d at 1038, 227 USPQ at 851. ("[I]f new evidence is presented on a disputed question of fact, a *de novo* fact finding is made by the district court."). *Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1346, 53 USPQ2d 1580, 1585 (Fed.Cir.2000) (stating that if the parties choose to pres-

ent the same evidence but do so through the use of live testimony, the district court also makes factual findings *de novo.*) (citing *Burlington Indus. Inc. v. Quigg,* 822 F.2d 1581, 1584, 3 USPQ2d 1436, 1439 (Fed.Cir.1987)).

▪ This case raises the question of what effect *Dickinson v. Zurko,* 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999), had on the standard of review to be applied by a district court under section 145 to board decisions and our subsequent review of the district court's action. In the event the parties choose not to supplement the record with new evidence, our pre-*Zurko* case law dictated that the district court review the board's fact-findings for clear error. *Gould,* 822 F.2d at 1077, 3 USPQ2d at 1303; *Fregeau,* 776 F.2d at 1038, 227 USPQ at 851; *see also Morgan v. Daniels,* 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657 (1894) ("[T]he decision [in the PTO] must be accepted as controlling upon [a] question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."). However, *Zurko* changed the standard for reviewing decisions of the board.

In *Zurko,* the Supreme Court held that the PTO is an agency subject to the Administrative Procedure Act, 5 U.S.C. § 706 (2000) ("APA"), constraints and a reviewing court must apply the APA's court/agency review standards. Section 706 of the APA provides that:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

. . .

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute.

A decision by the PTO is reviewed on the administrative "record of an agency hearing provided for by statute." *In re Gartside,* 203 F.3d 1305, 1313–1314, 53 USPQ2d 1769, 1774 (Fed.Cir.2000). Therefore, a reviewing court, whether this court or the district court, applies the "substantial evidence" standard of review to findings of fact made by the board.

If the parties choose to present additional evidence to the district court, as they did here, the district court would make *de novo* factual findings if the evidence is conflicting. We then would review the district court's legal conclusions without deference and its *de novo* factual findings under the traditional court/court standard of review, clear error. *Zurko,* 527 U.S. at 164, 119 S.Ct. 1816 ("[N]onexpert judicial factfinding calls for the court/court standard of review."). Because this case is before us on summary judgment, however, we review a district courts grant of summary judgment *de novo* and construe the facts in the light most favorable to the non-movant. *Bose Corp. v. JBL, Inc.,* 274 F.3d 1354, 1358, 61 USPQ2d 1216, 1218 (Fed.Cir.2001). Obviousness is a question of law with underpinning factual findings. *Tec Air, Inc. v. Denso Mfg. Mich. Inc.,* 192 F.3d 1353, 1359, 52 USPQ2d 1294, 1297–98 (Fed.Cir.1999).

■ Mazzari argues that summary judgment should not have been granted because his invention was reduced to practice before Bryden and there is no motivation to combine Bryden and Menezes. To establish an actual reduction to practice, an inventor must prove that he constructed his claimed invention and that it would work for its intended purpose. *Cooper v. Goldfarb,* 154 F.3d 1321, 1327, 47 USPQ2d 1896, 1901 (Fed.Cir.1998). Even construed in the light most favorable to Mazzari, he was unable to show any evidence that he performed a method that killed, repelled or inhibited the reproduction of zebra mussels prior to Bryden.

The only support for Mazzari's position that there was no motivation to combine Bryden and Menezes was the declaration of Boraas who stated that based upon the tests of a sonic repelling device that he had witnessed, no one skilled in the art would combine Bryden and Menezes. However, Boraas also admitted that the device that he had witnessed was not the Bryden device and that he was not one of ordinary skill in the art. This, taken together with Claudi's declaration submitted by the PTO, demonstrates that no issue of material fact exists as to whether one of skill in the art would be motivated to combine Bryden and Menezes.

The PTO presented three additional arguments before the district court. First, it argued that Kowalewski anticipates the claims at issue. Mazzari does not deny that Kowalewski fully teaches the limitations of the claims. Rather he argues that it is not available as prior art because it was not accessible to the public until 1992. But the Fish declaration establishes that Kowalewski was available in June of 1991, predating Mazzari's filing.

Second, the PTO argued Breitig anticipates Mazzari's invention. Mazzari does not challenge that Breitig teaches every element of the claimed invention. Rather, he argues that Breitig cannot be prior art because it was written in German. A publication printed in a foreign country can

act as a statutory bar. *See* 35 U.S.C. § 102(b). Because Breitig was publicly available in a library as of 1965 and fully discloses each and every limitation of the claimed invention, it anticipates the claims.

Finally, the PTO argued that additional prior art references, when combined with Menezes, render the claims obvious because the references illustrate that it is well known in the art to use acoustic energy to kill and repel zebra mussels. Mazzari does not dispute the teachings of the additional references nor their combination with Menezes. Therefore, the district court properly concluded that the claimed invention is unpatentable based on the combination of Menezes with any one of the additional references.

### Conclusion

Accordingly, the judgment of the United States District Court for the District of Columbia is affirmed.

*AFFIRMED.*