Opinion for the court filed by Circuit Judge MOORE, in which Chief Judge RADER and Circuit Judges LOURIE, BRYSON, LINN, and PROST join.
Concurring-in-part, dissenting-in-part opinion filed by Circuit Judge NEWMAN.
Dissenting opinion filed by Circuit Judge DYK, in which Circuit Judge GAJARSA joins.
MOORE, Circuit Judge.
Under the patent laws, a patent applicant who is dissatisfied with the decision of the Board of Patent Appeals and Interferences (Board) regarding his application may choose one of two paths. The applicant may appeal the Board’s decision to the Court of Appeals for the Federal Circuit, which will review the Board’s decision on the record that was before the U.S. Patent and Trademark Office (Patent Office). Alternatively, the applicant may file a civil action in district court, and the court will determine whether the applicant “is entitled to receive a patent for his invention ... as the facts in the case may appear.” 35 U.S.C. § 145. This case presents the issue of what limitations exist on an applicant’s right to introduce new evidence in a § 145 civil action.
We have characterized this civil action as a “hybrid” action. It is not an appeal; the language of § 145 expressly distinguishes its civil action from a direct appeal, and the Supreme Court has recognized that an applicant may introduce new evidence before the district court that was not presented to the Patent Office. However, it is also not an entirely de novo proceeding. Issues that were not considered by the Patent Office cannot be raised with the district court in most circumstances, and if no new evidence is introduced, the court reviews the action on the administrative record, subject to the court/agency standard of review. The particular significance of a § 145 civil action is that it affords an applicant the opportunity to introduce new evidence after the close of the administrative proceedings — and once an applicant introduces new evidence on an issue, the district court reviews that issue de novo. Thus, an applicant’s ability to introduce new evidence is the hallmark of a § 145 action. It is the primary factor *1323 that distinguishes a civil action under § 145 from an appeal.
We hold that 35 U.S.C. § 145 imposes no limitation on an applicant’s right to introduce new evidence before the district court, apart from the evidentiary limitations applicable to all civil actions contained in the Federal Rules of Evidence and Federal Rules of Civil Procedure. In doing so, we reject the Director’s proposal that only “new evidence that could not reasonably have been provided to the agency in the first instance” is admissible in a § 145 action. Dir. Br. at 8. While the proceedings before the Patent Office do not limit the admissibility of new evidence in the district court, they may be considered by the district court if they cast doubt on the reliability of late-produced evidence, as with inconsistent statements or new recollections of previously forgotten events. As with any evidence introduced in a civil action, the district court as fact-finder may give less weight to evidence introduced by an applicant in a § 145 action if the district court questions its credibility or reliability. Because the district court abused its discretion when it excluded Mr. Hyatt’s declaration under the wrong legal standard, we vacate the decision of the district court and remand.
I. BACKGROUND
Gilbert P. Hyatt is the sole named inventor of U.S. Patent Application No. 08/471,702 (the '702 application), titled “Improved Memory Architecture Having a Multiple Buffer Output Arrangement.” The '702 application relates to a computerized display system for processing image information.
Mr. Hyatt filed the '702 application on June 6,1995. As filed, the '702 application included a 238-page specification, 40 pages of figures, and 15 claims; it originally claimed priority through a chain of related applications to an application filed in 1984 and was later amended to claim priority to a 1975 application. Mr. Hyatt filed several preliminary amendments in which he amended the drawings and specification and added 74 new claims.
The examiner issued a nonfinal office action rejecting all pending claims on various grounds, including abandonment, obviousness, and double patenting. Mr. Hyatt filed a response, in which he traversed the abandonment and obviousness rejections and amended the claims to distinguish over the claims of his copending applications. Mr. Hyatt also cancelled various claims and added new ones, bringing the total number of claims to 117.
The examiner informed Mr. Hyatt that the response was incomplete because Mr. Hyatt had failed to identify the novelty of and support in the specification for his amended and added claims. Mr. Hyatt identified features of the new claims that allegedly distinguished over the prior art. Mr. Hyatt also listed pages of the specification that contained representative support for each of the distinguishing features of the claims.
The examiner issued a final office action rejecting all 117 claims. He identified particular categories of claimed subject matter that he concluded lacked support in the specification and rejected all claims under 35 U.S.C. § 112, first paragraph, for failure to comply with the written description and enablement requirements. He also rejected all claims for both obviousness-type and Schneller-type double patenting over eight references. Finally, he rejected nine claims as being anticipated and seven as being obvious over a combination of three references. All told, the examiner issued 2546 separate rejections of Mr. Hyatt’s 117 claims.
Mr. Hyatt appealed to the Board, addressing every one of the examiner’s grounds for rejection in a 129-page appeal *1324 brief. With respect to the written description rejections, Mr. Hyatt argued that the limitations identified by the examiner as lacking sufficient written description had “extensive basis” in the specification. J.A. 10830. Mr. Hyatt included a table (Table 1) that listed representative pages in the specification containing the “terminology” objected to by the examiner. J.A. 10832. For certain terms, Mr. Hyatt also identified figures and page ranges of the specification that described the relevant terms.
The Board reversed all of the examiner’s rejections for obvious-type and Schneller-type double patenting. The Board also reversed all of the anticipation and obviousness rejections. With respect to the written description rejections, the Board noted that merely pointing to the occurrence of isolated words in the specification — as Mr. Hyatt had done in Table I— did not adequately establish that the specification contained written description for the particular combination of elements that made up each limitation. Still, after performing its own review of the specification, as it is required to do, the Board reversed all of the examiner’s written description and enablement rejections with respect to 38 of the pending claims and many of these rejections for the other 79 claims, finding that the features identified by the examiner as lacking written description were either adequately disclosed or were not claimed. Thus, Mr. Hyatt prevailed on over 93% of the examiner’s rejections at the Board level. The Board affirmed at least one of the examiner’s written description and enablement rejections with respect to each of 79 claims. Mr. Hyatt filed a Request for Rehearing; the Board dismissed the Request without considering the merits, finding that Mr. Hyatt raised new arguments that could have been presented earlier to either the examiner or the Board.
Following the Board’s decision dismissing his Request for Rehearing, Mr. Hyatt filed a civil action in the United States District Court for the District of Columbia against the Director of the Patent Office (Director) pursuant to 35 U.S.C. § 145. The Director moved for summary judgment that the pending claims were invalid for failure to comply with the written description requirement. Mr. Hyatt opposed the motion, arguing that genuine issues of material fact existed to preclude summary judgment as to written description. In support of his opposition, Mr. Hyatt submitted a written declaration in which he identified portions of the specification that one of skill in the art would understand to describe the limitations challenged by the Director. The Director argued that the court should not consider Mr. Hyatt’s declaration because he did not previously submit it to the examiner or the Board.
The district court determined that it could not consider Mr. Hyatt’s declaration. Hyatt v. Dudas, 2005 WL 5569663, at *4, 2005 U.S. Dist. LEXIS 45319, at *12 (D.D.C. Sept. 30, 2005). The court found that the Board’s written description rejections were substantively identical to, albeit more detailed than, the rejections issued by the examiner. Id. at *6, 2005 U.S. Dist. LEXIS 45319, at *19. Because Mr. Hyatt’s declaration was directed to those written description rejections, the court concluded that he could have presented the declaration earlier, “certainly by the time his patent application was considered by the Board.” Id. at *6, 2005 U.S. Dist. LEXIS 45319, at *24. Finding that Mr. Hyatt had no explanation for why he failed to offer his declaration during the proceedings before the Board, the court determined that “[Mr.] Hyatt’s failure to explain why he didn’t submit his declaration earlier is negligent, and the district court need not consider evidence negligently submitted after the end of administrative pro *1325 ceedings.” Id. at *7, 2005 U.S. Dist. LEXIS 45319, at *26.
Mr. Hyatt did not submit any evidence to the district court apart from his declaration, which the court excluded. Therefore, the court reviewed the Board’s fact findings for substantial evidence and granted summary judgment to the Director that the pending claims were unpatentable for failure to comply with the written description requirement. Id. at *7, 2005 U.S. Dist. LEXIS 45319, at *27.
Mr. Hyatt appealed, and a divided panel of this court affirmed. Hyatt v. Doll, 576 F.3d 1246 (Fed.Cir.2009). The panel majority acknowledged that “it is beyond question that in appropriate circumstances new evidence may be submitted to the district court in a § 145 action (subject, at least, to the Federal Rules of Evidence).” Id. at 1266. However, the majority stated that there was a “general practice” among federal courts “in some circumstances to exclude evidence which a party could and should have introduced before the Patent Office but did not despite an obligation to do so.” Id. at 1266. The majority also concluded that the Administrative Procedure Act (APA) imposed restrictions on the admission of new evidence in a § 145 action. Id. at 1270. The majority noted that judicial review of an agency action is generally restricted to the agency record and that the Patent Office is an agency whose findings of fact must be reviewed according to the APA’s court/agency standard of review. Id. at 1267, 1269. Therefore, the majority determined that although review in a § 145 action is “[o]f course ... not strictly confined to the agency record,” “neither are [§ 145] proceedings wholly de novo.” Id. at 1269.
Turning to the merits of Mr. Hyatt’s case, the majoiity stated that although Mr. Hyatt could have identified the portions in the specification that provided written description support for the disputed limitations any time after the office action, he “refused to cooperate, even though he necessarily possessed the information the examiner sought by the time he filed his application.” Id. Although the majority acknowledged the district court’s finding that Mr. Hyatt’s failure to submit the evidence in his declaration earlier was negligent, the majority determined that “it is clear from the record that Hyatt willfully refused to provide evidence in his possession in response to a valid action by the examiner.” Id. (emphasis added). In light of Mr. Hyatt’s “willful non-cooperation,” the majority held that the district court did not abuse its discretion in excluding the declaration. Id. The majority then affirmed the court’s grant of summary judgment. Id. at 1279.
The dissenting judge disagreed, arguing that the district court abused its discretion by applying the wrong legal test for the admissibility of the evidence. The dissent argued that the plain language, legislative history, and Supreme Court jurisprudence relating to § 145 establish that an applicant’s right to present new evidence in a § 145 action is subject only to the Federal Rules of Evidence and Civil Procedure. Id. at 1280-81, 1284. Further, the dissent disputed the propriety of determining on appeal that Mr. Hyatt willfully withheld his declaration.
We agreed to rehear the appeal en banc and vacated the judgment of the panel. Hyatt v. Kappos, 366 Fed.Appx. 170 (Fed.Cir.2010). We asked the parties to direct their briefs to the following questions:
(a) Are there any limitations on the admissibility of evidence in section 145 proceedings? In particular—
(i) Does the Administrative Procedure Act require review on the agency record in proceedings pursuant to section 145?
*1326 (ii) Does section 145 provide for a de novo proceeding in the district court?
(iii) If section 145 does not provide for a de novo proceeding in the district court, what limitations exist on the presentation of new evidence before the district court?
(b) Did the district court properly exclude the Hyatt declaration?
In addition to the parties’ briefs, we received seven amicus briefs. Amicus briefs submitted by amici Public Patent Foundation, American Intellectual Property Law Association (AIPLA), Fédération Internationale des Conseils en Propriété Industrielle, New York Intellectual Property Law Association (NYIPLA), and Intellectual Property Owners Association (IPO) opposed the panel majority’s imposition of limitations on the evidence admissible in a § 145 action. Amici Intel Corporation and the Franklin Pierce Law Center submitted briefs arguing in favor of greater limitations on the admissibility of evidence in § 145 actions, though neither argued in favor of the standard proposed by the Patent Office in this case.
We heard oral argument on July 8, 2010. For the reasons below, we hold that the only limitations on the admissibility of evidence applicable to a § 145 proceeding are the limitations imposed by the Federal Rules of Evidence and Federal Rules of Civil Procedure. Therefore, we hold that the district court applied the wrong legal standard for the admissibility of evidence in a § 145 proceeding and abused its discretion when it excluded Mr. Hyatt’s declaration.
II. Discussion
On rehearing, Mr. Hyatt argues that the only limitations on the admissibility of new evidence in a § 145 proceeding are the rules of evidence generally applicable to all civil actions. Mr. Hyatt asserts that the legislative history of § 145 and its predecessor statute shows that Congress intended to provide a genuine alternative to an on-the-record appeal that permits an applicant to bring a new case, complete with new evidence, to show that his patent should issue. Mr. Hyatt asserts that case law from the Supreme Court and this circuit supports his interpretation. Mr. Hyatt also argues that nothing in the APA limits the introduction of new evidence in a § 145 proceeding. Therefore, Mr. Hyatt contends that the district court acted improperly in excluding his declaration.
The Director, in contrast, argues that § 145 should be interpreted to prohibit an applicant from introducing new evidence before the district court unless the applicant could not reasonably have provided that evidence to the Patent Office in the first instance. The Director asserts that the proceeding authorized by the predecessor statute of § 145 was effectively a suit to set aside a judgment and that under established rules of equity practice, a court presiding over such a suit would have excluded evidence that the plaintiff failed, without reasonable excuse, to present previously. Further, the Director argues that APA principles and various policy considerations weigh in favor of limiting an applicant’s right to introduce new evidence. The Director contends that because Mr. Hyatt could have presented the declaration to the examiner and to the Board prior to instigating the present action, the district court correctly excluded the declaration.
A.
Section 145, titled “Civil action to obtain patent,” provides as follows:
An applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under section 134(a) of this title may, unless appeal has been taken to the United States Court of Appeals for the Federal Cir *1327 cuit, have remedy by civil action against the Director in the United States District Court for the District of Columbia if commenced within such time after such decision, not less than sixty days, as the Director appoints. The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law. All the expenses of the proceedings shall be paid by the applicant.
35 U.S.C. § 145 (emphases added).
On its face, § 145 authorizes a civil action in district court by which an applicant can prove his entitlement to a patent. The statute provides no indication that this civil action is somehow different from a customary civil action. In particular, § 145 does not provide that unique rules of evidence, separate from or supplementary to the Federal Rules of Evidence that apply to all civil actions, control to limit an applicant’s ability to introduce new evidence before the district court. Additionally, § 145 makes clear that the civil action is distinct from an appeal, in which the applicant would be limited to the record before the Patent Office. See 35 U.S.C. § 144. Pursuant to the plain language of § 145, this civil action does not merely afford judicial review of agency action. Rather, the statute directs that the district court may “adjudge that such applicant is entitled to receive a patent for his invention ... as the facts in the case may appear.”
B.
The lengthy legislative history of § 145 and its predecessor statute, which dates back nearly to the creation of the Patent Office, shows that Congress intended to provide for a civil action in which an applicant would be free to introduce new evidence. Congress established the Patent Office and the patent examination scheme in 1836. Act of July 4, 1836, ch. 357, 5 Stat. 117 (1836 Act). The 1836 Act provided that the Commissioner of Patents would determine whether each applicant was entitled to a patent on his application. Id. §§ 1, 7, 5 Stat. 117, 120. An applicant dissatisfied with the Commissioner’s decision regarding his application could appeal to a board of three examiners, which could overturn the Commissioner’s decision in full or in part. Id. § 7, 5 Stat. 121.
The decision of the board of examiners was final in ex parte cases. Id.; see also P.J. Federico, Evolution of Patent Office Appeals, 22 J. Pat. Off. Soc’y 838, 840 (1940). However, in cases where the board rejected an application on the ground that it interfered with an unexpired patent, the 1836 Act provided that the applicant “may have remedy by bill in equity.” Id. § 16, 5 Stat. 123-24. A bill in equity was the written mechanism that commenced an original suit in a court of equity. See Shipman, Handbook of the Law of Equity Pleading § 101, p. 168 (West 1897). Courts with jurisdiction over an applicant’s bill in equity could “adjudge that such applicant is entitled ... to have and receive a patent for his invention ... as the fact of priority of right or invention shall in any such case be made to appear.” 1836 Act, § 16, 5 Stat. 124. Three years later, Congress extended an applicant’s remedy by bill in equity beyond interferences to “all cases where patents are refused for any reason whatever.” Act of Mar. 3, 1839, ch. 88, § 10, 5 Stat. 353, 354.
Congress made various changes to the appeal structure within the Patent Office over the next few decades. None of these changes affected an applicant’s separate remedy by bill in equity, which continued to be available. In 1870, Congress passed *1328 an act to “revise, consolidate, and amend the Statutes relating to Patents and Copyrights.” Act of July 8, 1870, ch. 230, 16 Stat. 198 (1870 Act). The 1870 Act provided for a three-tier appeal process within the Patent Office. An applicant whose application was rejected by the primary examiner could appeal to a board of examiners-in-chief. Id. § 46, 16 Stat. 204-05. Similarly, a party to an interference could appeal an adverse decision by the examiner in charge of interferences to the board. Id. If the applicant or party to the interference was dissatisfied with the board’s decision, he could appeal first to the Commissioner of Patents and then to the supreme court of the District of Columbia. Id. §§ 47-48,16 Stat. 205.
Pursuant to the 1870 Act, after all of these appeals were exhausted, the applicant could still seek remedy by bill in equity:
[Wjhenever a patent on application is refused ... the applicant may have remedy by bill in equity; and the court ... may adjudge that such applicant is entitled, according to law, to receive a patent for his invention ... as the facts in the case may appear.... [A]nd all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not.
Id. § 52. Congress later recodified this section as § 4915 of the Revised Statutes.
Congress significantly modified the patent application review process in 1927, primarily in response to criticism regarding the length and complexity of the process. Act of March 2,1927, ch. 273, 44 Stat. 1335 (1927 Act); see also Federico, 22 J. Pat. Off. Soc’y at 941.[1] Various schemes were proposed to Congress for simplifying the process. Some proposals advocated eliminating one of the appeals; others advocated doing away with the bill in equity under § 4915. Id. at 941-42. The continued viability of § 4915 was a particularly disputed issue, and Congress heard extensive testimony regarding the merits of the remedy by bill in equity in the hearings that preceded the Act.
Those who favored retaining § 4915 argued that an applicant’s right to introduce evidence that had not been before the Patent Office created a truly distinct, and therefore valuable, alternative to an on-the-record appeal. Charles E. Howson, Chairman of the Committee on Patent Law Revision for the American Bar Association, explained the significance of § 4915 as follows:
Section 4915 has always been regarded by the patent bar, or those experienced in patent practice, as the final check on the Patent Office to enable a deserving inventor to get his just deserts if everything else fails. The advantage of section 4915 is that it enables the party in interest, desiring to obtain a patent, to take evidence in a court or tribunal whose business it is to try issues of facts and make up a record in addition to that he has been enabled to furnish the examiners in the Patent Office, and therefore get before a court of competent jurisdiction everything connected with his rights and every fact connected with his patent; in other words, have before him everything that courts in the *1329 country have before them in infringement cases.
To Amend Section 52 of Judicial Code and Other Statutes Affecting Procedure in Patent Office: Hearings on H.R. 6252 and H.R. 7087 Before the H. Comm, on Patents, 69th Cong., 1st Sess. 20-21 (1926) (To Amend Section 52) (emphases added). Another proponent of § 4915, A.C. Paul, the Chairman of the Patent Section of the Legislation Committee of the American Bar Association, testified that he understood § 4915 to grant an applicant the right to “have the case start de novo after the decision of the board.” Id. at 81. Mr. Paul distinguished the bill in equity under § 4915 from an on-the-record appeal, explaining that “the difference [between § 4915 and an appeal] would be then if we went to the court of appeals by an appeal the decision must be based upon the same record. If we go into a court of equity the parties may use the record that they have in the Patent Office and may supplement it by additional evidence.” Id. (emphasis added). Another committee member testified that the original suit under § 4915 allowed an inventor to strengthen his case by enabling an applicant to “take testimony and bring out all the facts pertinent and have an absolutely full hearing in the matter.” Id. at 18 (statement of Henry Huxley, Member of the Patent Section of the Legislation Committee of the American Bar Association). Congressman Albert Vestal similarly explained that “if a party feels aggrieved, he can bring his suit in the equity court [under § 4915], but it is not an appeal. It is the bringing of a new suit.” Id. at 36; see also id. at 66 (under § 4915, “you may go to a court of equity and take testimony in open court and use the testimony in the Patent Office or both and have it as a proceeding de novo, not appeal with the presumption in favor of what has been done, but where you stand and the court listens to what you have to say and decides it on the merits”) (statement of Otto R. Barnett, President, American Patent Law Association, Chicago, Ill.).
The opponents of § 4915 also recognized that the remedy by bill in equity allowed an applicant to freely introduce new evidence in the district court. Indeed, they objected to the provision on precisely this basis. For example, the Commissioner of Patents testified that § 4915 entitled an applicant to “start de novo ... and build up a new record” in district court. Id. at 80 (statement of Hon. Thomas E. Robertson, Commissioner of Patents). He cautioned that § 4915 permitted applicants to “bring[ ] in evidence that they could have brought in before [the Patent Office] but did not.” Id. at 81. The Commissioner also recognized that this new action allowed the relitigation of matters already decided by the Patent Office, permitting the applicant “to build up a new record for dragging an opponent through a second time.” Id. at 80; see also id. at 81 (“after dragging a man through all this procedure which you have said is so complicated and burdensome, [an applicant can] start de novo in court, and bring in testimony not taken the first time”). The former Assistant Commissioner similarly opposed § 4915, arguing that § 4915 “should be cut out entirely for ex parte applications” to force an applicant to introduce “all the testimony pertinent to his case” to the Patent Office. Id. at 76 (statement of Karl Fenning, former Assistant Commissioner of Patents).
Thus, proponents and opponents of § 4915 alike recognized, and conveyed to Congress, that the remedy by bill in equity allowed an applicant to introduce new evidence in the district court, regardless of whether that evidence had been provided to the Patent Office in earlier proceedings. Nothing in the Congressional record leading up to the 1927 Act indicates that any member of Congress or the bar contem *1330 plated any limit on this right apart from the limits imposed by the normal rules of equity practice.
Despite being presented with the policy reasons for eliminating the remedy by bill in equity, Congress chose to retain § 4915. 1927 Act, § 3, 44 Stat. 1335-36. However, Congress gave applicants a right to choose between an appeal and the remedy by bill in equity. An applicant who chose to appeal an adverse decision by the Patent Office thus “waive[d] his right to proceed under section 4915.” Id. § 8, 44 Stat. 1336.
Congress bifurcated § 4915 into two provisions in 1952, sections 145 and 146 of Title 35 of the United States Code.[2] Act of July 19, 1952, ch. 950, §§ 145-46, 66 Stat. 792, 803 (1952 Act). Section 145, which controlled ex parte proceedings, provided that an “applicant dissatisfied with the decision of the Board of Appeals may unless appeal has been taken to the United States Court of Customs and Patent Appeals have remedy by civil action against the Commissioner.” Id. § 145, 66 Stat. 803 (emphasis added). Section 146, which applied to interferences, similarly provided for parties to an interference to have a “remedy by civil action” and that “the record in the Patent and Trademark Office shall be admitted ... without prejudice to the right of the parties to take further testimony.” Id. § 146, 66 Stat. 803. Congress stressed that the 1952 Act made “no fundamental change in the various appeals and other review of Patent Office action.” See S.Rep. No. 82-1979 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2400. Subsequent changes to § 145 have not altered the substantive application of the statute in any way relevant to our analysis.
Though the Director does not directly dispute any of the relevant legislative history, he nonetheless argues that Congress intended for new evidence to be admitted in § 145 actions only where it could not reasonably have been presented to the agency in the first instance. Dir. Br. at 28. The Director points to pre-1952 decisions of some federal courts which he characterizes as having “excluded or discounted evidence which the applicant had failed, without reasonable excuse, to present to the agency.” Id. at 26. According to the Director, Congress must have intended to codify this “longstanding” interpretation when Congress reenacted § 4915 without substantive change as § 145. Id. at 28. The flaw with the Director’s claim is inherent in his argument — Congress could not have implicitly adopted the different approaches various courts took with regard to an admissibility standard.
The Director is correct that, prior to the 1952 Act, some regional circuits excluded or gave less weight to evidence based on an applicant’s conduct before the Patent Office. The courts did so under an array of inconsistent standards (including willful withholding, intentional suppression, and bad faith). See, e.g., Barrett Co. v. Koppers Co., 22 F.2d 395, 397 (3d Cir.1927) (holding that a when a party intentionally withholds evidence within his possession before the Patent Office, he may not later introduce that evidence in a suit under § 4915); Dowling v. Jones, 67 F.2d 537, 538 (2d Cir.1933) (explaining that in Barrett “the Third Circuit refused to consider evidence which the inventor had deliberately suppressed in the interference, and used broader language than the exact situation required ... However, it does not *1331 follow that it would have extended the doctrine to evidence not suppressed, but merely neglected through the plaintiffs slackness in preparation.”); Knutson v. Gallsworthy, 164 F.2d 497, 509 (D.C.Cir.1947) (“[I]f no bad faith on the part of the profieren is involved, such as deliberate withholding for some tactical reason, the court could receive the evidence.”).[3] In many of the cases cited by the Director, the court both admitted and considered the applicant’s new evidence. See, e.g., Globe-Union, Inc. v. Chicago Tel. Supply Co., 103 F.2d 722, 727 (7th Cir.1939) (“We can not escape the strength and the compelling influence of the additional evidence that was adduced in the district court.”) Some courts held that an applicant’s failure to previously introduce the evidence before the Patent Office goes to the weight of the evidence, not to its admissibility. E.g., Western Electric Co. v. Fowler, 177 F. 224, 228-29 (7th Cir.1910); Standard Cartridge Co. v. Peters Cartridge Co., 77 F. 630, 638 (6th Cir.1896). As we explain in greater detail below, when failure to introduce the evidence earlier casts doubt as to its credibility or reliability, we believe this is the correct approach.
We are not persuaded by the Director’s argument that Congress intended that only evidence that could not have reasonably been presented to the Patent Office in the first instance is admissible in § 145 proceedings. In view of the language of the statute and the extensive legislative history, we agree with Mr. Hyatt that Congress intended that applicants would be free to introduce new evidence in § 145 proceedings subject only to the rules applicable to all civil actions, the Federal Rules of Evidence and the Federal Rules of Civil Procedure.
C.
The Director does not dispute that § 145, like its predecessor provisions, permits applicants to introduce new evidence in the district court proceedings. See, e.g., Dir. Br. at 9, 12, 18. However, the Director contends that the applicant is only allowed to introduce new evidence that “the applicant could not reasonably have provided to the agency in the first instance.” Id. at 9. The Director argues that this limitation stems from the rules of equity practice applicable to § 4915 actions, which would have prohibited an applicant from introducing new evidence except in limited circumstances. The Director also asserts that the APA and various policy considerations operate to impose additional limitations on an applicant’s right to introduce new evidence. We address each of these arguments in turn.
1.
The Director argues that the rules of equity practice barred an applicant from introducing evidence in a § 4915 suit if the *1332 applicant failed, without reasonable excuse, to provide the evidence to the Patent Office in the first instance. The Director relies for this proposition on Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 (1894), where the Supreme Court characterized a suit under § 4915 as “something in the nature of a suit to set aside a judgment.” Id. at 124, 14 S.Ct. 772. The Director argues that a suit to set aside a judgment is a specific type of bill in equity used to seek reversal of a prior decree or judgment and was called a “bill of review.” The Director explains that a court presented with a bill of review to overturn a judgment would not consider any new evidence unless the plaintiff could not have obtained the evidence before the first trial without reasonable diligence. See Shipman, supra, at § 101, p. 168. The Director argues that the evidentiary constraints applicable to a bill of review applied to actions under § 4915 and, therefore, asserts that an applicant could not introduce any new evidence in a § 4915 action unless he could not reasonably have introduced it to the Patent Office in the first instance.
There are several problems with the Director’s reliance on Morgan and the analogy to a bill of review. The Supreme Court’s decision in Morgan does not provide support for the Director’s “reasonable excuse” admissibility standard. In fact, Morgan does not relate to the admissibility of new evidence at all: the parties in that case did not seek to introduce any new evidence before the Circuit Court. 153 U.S. at 122, 14 S.Ct. 772. Instead, when the Supreme Court indicated that the suit under § 4915 was “something in the nature of a suit to set aside a judgment,” it was referring to the standard of review applicable to Patent Office fact findings when no new evidence is introduced in the district court. The Supreme Court considered what “rule ... should control the [reviewing] court in the determination of this case.” Id. at 123, 14 S.Ct. 772. The Court observed that the Circuit Court, which had required the plaintiff to provide “a clear and undoubted preponderance of proof,” apparently applied the standard of review used by “an appellate court in reviewing findings of fact made by the trial court.” Id. at 123, 14 S.Ct. 772. “The [Morgan ] Court, in other words, reasoned strongly that a court/court review standard is not proper [for a court reviewing Patent Office fact findings] ... And its reasoning makes clear that it meant those words to stand for the court/agency review standard.” Dickinson v. Zurko, 527 U.S. 150, 159-60, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999).
Thus, Morgan is a case about what standard of review ought to apply when the district court decides whether an applicant is entitled to a patent on exactly the same record that was before the Patent Office. When no new evidence is introduced, the § 145 action is “something in the nature of a suit to set aside a judgment,” and the district court reviews the Patent Office fact findings for substantial evidence (i.e., according to the court/agency standard of review). Morgan offers no guidance on the scope of admissibility of evidence in a § 4915 proceeding. There are, however, other Supreme Court cases that have spoken to the admissibility of evidence in these types of proceedings. In Butterworth v. Hoe, 112 U.S. 50, 5 S.Ct. 25, 28 L.Ed. 656 (1884), the Supreme Court explained:
It is thereby provided [in § 4915] that the applicant may have remedy by bill in equity. This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the patent-office, like that authorized in section *1333 4911, confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced and upon the whole merits.
Id. at 61, 5 S.Ct. 25 (emphasis added).
The Butterworth Court identified three circuit court cases as exemplifying “the uniform and correct practice in the Circuit Courts” with respect to suits under § 4915. 112 U.S. at 61, 5 S.Ct. 25. In each of these cases, the Circuit Court explicitly recognized that a § 4915 suit was to be heard upon all competent evidence that the parties chose to introduce, regardless of whether the evidence was or could have been provided to the Patent Office. Evidence was “competent” for admissibility purposes so long as it complied with the “rules and practice of a court of equity.” See In re Squire, 22 F. Cas. 1015, 1016 (C.C.E.D.Mo.1877) (“Either party, therefore, is at liberty to introduce additional evidence, or rather, to speak more accurately, the hearing is altogether independent of that before the commissioner, and takes place on such testimony as the parties may see fit to produce agreeably to the rules and practice of a court of equity.”); Butler v. Shaw, 21 F. 321, 327 (C.C.D.Mass.1884) (“[§ 4915] contains no provision requiring the case to be heard upon the evidence produced before the commissioner ... and, as has been held in this and other circuits, the court may receive new evidence, and has the same powers as in other cases in equity”); Whipple v. Miner, 15 F. 117, 118 (C.C.D.Mass.1883) (“[§ 4915] is, plainly, an independent, original jurisdiction which is given to the courts”). Admitting evidence in accordance with the “ordinary course of equity practice and procedure” is admitting evidence in accordance with the Federal Rules of Evidence and Civil Procedure.
The Supreme Court has consistently recognized that new evidence may be introduced in these district court proceedings. See, e.g., Gandy v. Marble, 122 U.S. 432, 439, 7 S.Ct. 1290, 30 L.Ed. 1223 (1887) (explaining that the § 4915 suit in equity was “not a technical appeal from the Patent Office, nor confined to the case as made in the record on that office”); Hoover Co. v. Coe, 325 U.S. 79, 83, 65 S.Ct. 955, 89 L.Ed. 1488 (1945) (explaining that the bill in equity in a § 4915 action afforded applicants “a formal trial ... on proof which may include evidence not presented in the Patent Office”). No Supreme Court case has ever placed any limitations on the admissibility of evidence in a § 145 or § 4915 proceeding apart from the ordinary rules applicable to all civil actions. To the contrary, the Supreme Court observed that the remedy by bill in equity provided by § 4915 “sav[ed] to litigants the option of producing new evidence in a court.” Hoover Co., 325 U.S. at 87, 65 S.Ct. 955. Most recently, in Zurlco, the Supreme Court stated that “[Section 145] permits the disappointed applicant to present to the court evidence that the applicant did not present to the PTO. The presence of such new or different evidence makes a factfinder of the district judge.” 527 U.S. at 164, 119 S.Ct. 1816. Our court has likewise held that a § 145 applicant is “entitled to” and may “choose to” to introduce new evidence in the district court proceedings. See, e.g., Mazzari v. Rogan, 323 F.3d 1000, 1004-05 (Fed.Cir.2003) (“A section 145 review ... affords the applicant an opportunity to present additional evidence or argue the previous evidence afresh” and “[i]f the parties choose to present additional evidence to the district court ... the district court would make de novo factual findings.”) (emphasis added); Fregeau v. Mossinghoff, 776 F.2d 1034, 1037 (Fed.Cir.1985) (“The [§ 145] proceeding, however, is not simply an appeal since the parties are entitled to submit additional evidence”) (emphasis added).
*1334 To the extent that the Supreme Court precedent offers guidance on the admissibility of evidence in these proceedings, it indicates that all competent evidence is admissible subject only to the ordinary course of equity practice and procedure, which is the Federal Rules of Evidence and Civil Procedure that are applicable to all civil actions. There is no support for the Director’s proposed standard, which would allow new evidence only if the evidence could not reasonably have been provided to the Patent Office.
The Director’s argument also fails because the bill in equity authorized by § 4915 is not a bill in review. The Director is correct in his characterization of the admissibility rules that would apply if a § 145 proceeding was nothing more than a bill of review. As the Director points out, a party filing a bill of review could introduce new evidence only if that evidence “could not have been discovered and presented by the exercise of due diligence before the decree in question was made.” Shipman, supra, at § 216; see also Beard v. Burts, 95 U.S. 434, 436, 24 L.Ed. 485 (1877). However, the bill in equity authorized by § 4915 is not a bill of review. A bill in equity was the written mechanism that began a judicial proceeding in any court of equity. See 1 Street, Federal Equity Practice § 135 (1909). A bill in equity could be either an original bill, which began “an independent suit in equity unconnected with any other previous or pending suit in the same court,” or a “dependent” bill, which “relate[d] to some matter already litigated in the court by the same parties.” Id. § 141, § 142. A bill of review was a particular type of dependent bill. Id. at § 146.
The bill in equity authorized by § 4915 is fundamentally different from a bill of review. Although the § 4915 action is “in fact, and necessarily, a part of the application for a patent,” Gandy, 122 U.S. at 439, 7 S.Ct. 1290, it is not a bill of review. A bill of review was a mechanism by which a court could reverse its own decree. 2 Street, Federal Equity Practice § 2121 (1909) (“that a bill of review will lie only in the court where the decree to be reversed was rendered is subject to no exception whatever ”) (emphasis added). The Supreme Court explained the distinction in Barrow v. Hunton, 99 U.S. 80, 25 L.Ed. 407 (1878): a bill in equity authorized “the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree,” while a bill of review involved “a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees.” Id. at 82-83. Because the bill in equity under § 4915 was not a bill of review, the evidentiary constraints peculiar to a bill of review do not control the admissibility of evidence in a § 145 civil action. Rather, the action is a civil action in which the district court is authorized to “adjudge that such applicant is entitled to receive a patent for his invention ... as the facts of the case may appear.” 35 U.S.C. § 145. While a § 145 proceeding is not completely independent from the prosecution process in the Patent Office, neither is it comparable to a bill of review.
Certainly, the proceedings before the Patent Office remain relevant in a § 145 action. As we explained in Fregeau, “in the absence of additional evidence affecting a particular finding,” the district court must apply the court/agency standard of review to that fact finding. 776 F.2d at 1038. This deferential standard of review applies in recognition that the fact findings were made by the Patent Office — the knowledgeable agency charged with assessing patentability. “On the other hand, where new evidence is presented to the district court on a disputed fact question, a de novo finding will be necessary to take *1335 such evidence into account together with the evidence before the board.” Id. We have also concluded that issues (and evidence relating to new issues) that were not raised in the Patent Office proceedings generally may not be raised in a § 145 proceeding. See Conservolite, Inc. v. Widmayer, 21 F.3d 1098, 1102 (Fed.Cir.1994) (listing circumstances in which new issues may be raised before the district court). Moreover, as we observed in Fregeau, in adjudicating entitlement to a patent, the district court must consider the record before the Patent Office as well as any new evidence admitted by the applicant. 776 F.2d at 1038. Although the Patent Office proceedings do impact § 145 proceedings in these various ways, we conclude that, consonant with the language of the statute, legislative history, and Supreme Court precedent, the only limitations on the admissibility of evidence in § 145 proceedings (for issues raised before the Patent Office) are the Federal Rules of Evidence and Civil Procedure.
Although we reject the Director’s proposed restriction on admissibility, the district court may consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant’s newly-admitted evidence. As with any evidence introduced in a civil action, the weight given to evidence introduced by an applicant in a § 145 action falls within the discretion of the district court. Should the facts of a particular case cast suspicion on new evidence that an applicant failed to introduce before the Patent Office, the district court in a § 145 action would be within its discretion to give that evidence less weight. Indeed, as discussed above, courts have considered an applicant’s failure to introduce evidence before the Patent Office in determining what weight to afford to the evidence. See Standard Cartridge Co., 77 F. at 638 (concluding that the evidentiary weight of new witness testimony on oral declarations supposedly made by the patentee who died and thus lost all opportunity to explain or deny was “much impaired from the fact that ... it was not introduced during the interference proceedings”); Western Electric Co., 177 F. at 228-29 (finding new recollections unconvincing: “And how comes it that the testimony of these witnesses, at this later date, comes out with so much greater definiteness than it came out at the earlier date, when, under ordinary circumstances, the event, being much more recent, ought to have been fresher in the witnesses’ minds?”) The practice of giving less weight to evidence whose reliability is impacted by an applicant’s failure, without explanation, to provide it to the Patent Office, is entirely proper, and this practice is fully consistent with the rule that we announce today.
Quite separate from the Director’s proposal, the dissent would have us rely on Citizens to Presene Overton Park v. Volpe, 401 U.S. 402, 414-20, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) to hold that the only new evidence that we should allow is that which the applicant could not bring to the Patent Office due to the inadequacies of the Patent Office’s procedures. Dissent 1344-45. First, the Director expressly rejects the applicability of Overton Park to § 145. Dir. Br. 19, n. 4 (“We do not contend that an applicant’s ability to introduce new evidence under Section 145 is limited to circumstances in which ‘agency factfinding procedures are inadequate.’ ” citing Overton Park). Additionally, the statute in question in Overton Park only provided for “judicial review” of agency action. 401 U.S. at 410, 91 S.Ct. 814. Section 145 specifically permits a “civil action” where the district court may adjudge entitlement to a patent “as the facts in the case may appear.” Where the statute permits a “civil action” in relation to agency actions, the Supreme Court has held that this amounts to a trial de novo. *1336 See Chandler v. Roudebush, 425 U.S. 840, 845-46, 862, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (“Here, by contrast, there is ‘specific statutory authorization’ of a district court ‘civil action,’ which both the plain language of the statute and the legislative history reveal to be a trial de novo.”). Here, the language of the statute and legislative history support the admission of new evidence in § 145 actions subject only to the Federal Rules of Evidence and Civil Procedure.
2.
With respect to the Director’s APA argument, the Director does not assert that the APA controls the admissibility of evidence in a § 145 action. To the contrary, the Director consistently acknowledges throughout his brief that new evidence is admissible in a § 145 action — unlike a typical APA action, in which judicial review is strictly limited to the administi-ative record. The Director’s argument instead is that when no new evidence is admitted in a § 145 action, the district court must review the fact findings of the Patent Office on the administrative record and subject to the APA.
This is an uneontroversial proposition: it is well settled that a reviewing court must apply the APA’s court/agency standard of review to Patent Office fact findings when no new evidence is admitted in a § 145 action. If the parties to a § 145 action do not introduce any new evidence before the district court, the court reviews the case on the same record presented to the agency and the reviewing court must apply the APA’s substantial evidence standard to Patent Office fact findings. See Mazzari, 323 F.3d at 1005.
But when a party to a § 145 action does introduce new evidence, the court’s review is no longer limited to the administrative record. Instead, the court must consider the new evidence in addition to the record, and “[t]he presence of such new or different evidence makes a factfinder of the district judge.” Zurko, 527 U.S. at 164, 119 S.Ct. 1816. Because the court must determine the weight and import of this new evidence, we have held that the district court in a § 145 action must make de novo fact findings with respect to factual issues to which the new evidence relates. Fregeau, 776 F.2d at 1038 (“where new evidence is presented to the district court on a disputed fact question, a de novo finding will be necessary to take such evidence into account together with the evidence before the board”); see also Mazzari, 323 F.3d at 1005 (“if the parties choose to present additional evidence to the district court [§ 145 action] ... the district court would make de novo factual findings if the evidence is conflicting [with the administrative record]”). The Director does not dispute that these standards of review apply in a § 145 action.
At most, the Director argues that the principles of deference to agency fact finding inherent in the APA scheme would tend to support more restrictions on the admissibility of evidence. However, this deference is already embodied in the standard of review applicable in a § 145 action. When the court reviews a case on the administrative record — that is, when no party introduces new evidence — the court applies the APA standard of review to Patent Office fact findings. Mazzari, 323 F.3d at 1005. When new evidence is introduced, the court acts as a factfinder with respect to that new evidence and would make de novo fact findings if the evidence conflicts with any related Patent Office finding. Id.; see also Zurko, 32.1 U.S. at 164, 119 S.Ct. 1816. However, the court must still consider the administrative record in making its fact findings; we have made clear that the court’s de novo finding must “take [new] evidence into account *1337 together with the evidence before the board.” Fregeau, 776 F.2d at 1038. Therefore, the dual standards of review applicable in a § 145 action maintain an appropriate level of deference to agency findings, while preserving to the court its role as factfinder with respect to new evidence.
3.
Finally, the Director presents various policy considerations in support of its proposal that evidence is not admissible unless it could not have reasonably been presented to the Patent Office first. The Director first argues that requiring plaintiffs to completely present all arguments and evidence to the agency in the first instance protects agency authority and promotes judicial efficiency. Although we agree that encouraging full disclosure to administrative tribunals is sound policy, Congress— not the Federal Circuit — must decide how best to do this. Congress heard extensive testimony on the advantages and disadvantages of providing applicants with a civil action to obtain a patent. In fact, Congress heard testimony on this very issue: the former Assistant Commissioner of Patents argued that § 4915 “should be cut out entirely for ex parte applications,” to force an applicant to introduce “all the testimony pertinent to his case” to the Patent Office. To Amend Section 52, 69th Cong., 1st Sess., at 76. This was a policy decision committed to the sole discretion of Congress; we may not replace Congress’ judgment with our own.
The Director asserts that if we do not limit an applicant’s right to introduce new evidence in a § 145 action, applicants will inevitably choose this route of review over a direct appeal under § 141 or will withhold evidence from the Patent Office to avoid generating adverse prosecution history. To deter applicants from exactly the type of procedural gaming that concerns the Director, Congress imposed on the applicant the heavy economic burden of paying “[a]ll the expenses of the proceedings” regardless of the outcome. 35 U.S.C. § 145. An applicant has every incentive to provide the Patent Office with the best evidence in its possession, to obtain a patent as quickly and inexpensively as possible. “It would be counterintuitive for an applicant to deliberately withhold non-cumulative evidence that would help persuade the BPAI to reverse the examiner’s rejection, and instead ... present it later on in a civil action when the party (as plaintiff) would be obligated to pay all the expenses — including the defendant PTO’s expenses.” NYIPLA Br. at 13; see also IPO Br. at 17 (“applicants proceeding before the PTO strike a strategic balance, submitting evidence likely sufficient to obtain a patent while avoiding overburdening the PTO”). Indeed, the fact that the vast majority of applicants pursue an on-the-record appeal instead of a § 145 action indicates that applicants generally consider the evidence before the Patent Office to be sufficient. Where an applicant decides to pursue a § 145 action, this may reflect a belief that the application at issue is or could be especially commercially significant; in such a case, the applicant likely believes that the additional cost of a § 145 action may be merited. See AIPLA Br. at 1.
Next, the Director asserts that interpreting § 145 to allow applicants to freely introduce new evidence before the district court would disturb the rule that arguments waived in administrative proceedings may not be raised for the first time in federal court. We have held that, in general, parties may not raise issues in the district court that were not raised during the proceedings before the Patent Office or by the Board’s final decision. Conservolite, 21 F.3d at 1102 (listing exceptions where courts may allow new evi *1338 dence on new issues). However, this rule does not preclude parties from introducing additional evidence as to issues that were raised before the Patent Office. Here, the issue is written description — the subject of Mr. Hyatt’s excluded declaration— and was raised before the Patent Office. Therefore, the doctrine of waiver is not applicable to this case.
D.
We hold that new evidence is admissible in a civil action under 35 U.S.C. § 145, subject only to the Federal Rules of Evidence and Federal Rules of Civil Procedure. We now consider whether, under this standard, the district court abused its discretion in excluding Mr. Hyatt’s declaration.
The district court found that Mr. Hyatt’s failure to explain why he did not submit his declaration to the Patent Office was negligent. Stating that it “need not consider evidence negligently submitted after the end of administrative proceedings,” the court excluded Mr. Hyatt’s declaration. Hyatt, 2005 WL 5569663, at *7, 2005 U.S. Dist. LEXIS 45319, at *26. The district court erred in determining that Mr. Hyatt’s negligence affected admissibility and therefore abused its discretion in excluding the declaration.[4]
Conclusion
For the reasons stated herein, the district court abused its discretion in excluding Mr. Hyatt’s declaration. We therefore vacate the judgment of the District Court for the District of Columbia and remand for further proceedings consistent with this opinion.
VACATED AND REMANDED

. As P.J. Frederico explained in 1940, the “bill in equity” which in 1839 applied to both ex parte and interference cases "was thus at this time [1839] given the scope which has been maintained to the present day.” Federico, 22 J. Pat. Off. Soc’y at 935. While Congress considered and changed the appeals process in 1927, the language of § 4915 in the bills debated in February 1927 and December 1927 was identical, and was ultimately enacted in § 4915 including the requirement that “the record in the Patent Office shall be admitted ... without prejudice, however, to the right of the parties to take further testimony.”

. As sections 145 and 146 both stem from § 4915, we have characterized these sections as "parallel provisions” to be treated similarly. Winner Int’l Royalty Corp. v. Wang, 202 F.3d 1340, 1345 (Fed.Cir.2000). We see no rationale that would justify distinguishing between interferences and ex parte actions for admissibility purposes.

. Post-1952 cases added to the hodgepodge of standards. See, e.g., Standard Oil Co. v. Montedison, S.P.A., 664 F.2d 356, 376 (3d Cir.1981) (rejecting the argument that the district court should have required tire party to explain why it was offering evidence for the first time before the district court and holding that "new expert testimony is clearly admissible in a section 146 action without such justification”); Velsicol Chem. Co. v. Monsanto Co., 579 F.2d 1038 (7th Cir.1978) (adopting a reasonably diligent standard); Heil Co. v. Snyder Indus. Inc., 763 F.Supp. 422, 426 (D.Neb. 1991) (holding that new evidence is admissible subject only to the rules of evidence). Our court previously recognized: "We are aware that this provision has received varying interpretations in the circuits. In our view, since an action under 35 U.S.C. § 146 has the hybrid nature of an appeal and a trial de novo, the statute authorizes the district court to accept all proffered testimony on issues raised by the parties during the proceedings below or by the board’s decision.” Case v. CPC Int’l, Inc., 730 F.2d 745, 752 (Fed.Cir.1984).

. Nothing in In re Alton, 76 F.3d 1168 (Fed.Cir.1996) is inconsistent with our decision today. An applicant may respond to a written description rejection in whatever way the applicant deems effective.