# United States Court of Appeals for the Federal Circuit

---

**NANTKWEST, INC.,**
*Plaintiff-Appellee*

v.

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellant*

---

2016-1794

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:13-cv-01566-GBL-TCB, Judge Gerald Bruce Lee.

---

Decided: June 23, 2017

---

ALAN J. HEINRICH, Irell & Manella LLP, Los Angeles, CA, argued for plaintiff-appellee. Also represented by MORGAN CHU, LAUREN NICOLE DRAKE, GARY N. FRISCHLING; SANDRA HABERNY, Newport Beach, CA.

JAYNIE RANDALL LILLEY, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by

MARK R. FREEMAN, DANA J. BOENTE, BENJAMIN C. MIZER;
NATHAN K. KELLEY, THOMAS W. KRAUSE, SCOTT C.
WEIDENFELLER, THOMAS L. CASAGRANDE, Office of the
Solicitor, United States Patent and Trademark Office,
Alexandria, VA.

MARK N. MUTTERPERL, Zeisler PLLC, New York, NY,
for amicus curiae International Trademark Association.

———————————

Before PROST, *Chief Judge*, DYK and STOLL, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Dissenting opinion filed by *Circuit Judge* STOLL.

PROST, *Chief Judge*.

Nantkwest, Inc. appeals from a decision of the United States District Court for the Eastern District of Virginia granting-in-part and denying-in-part the United States Patent and Trademark Office ("USPTO") Director's motion for fees. In its order, the district court granted the Director's requested witness' fees but denied the requested attorneys' fees. The Director appeals the court's denial of attorneys' fees. We reverse.

I

In 2001, Dr. Hans Klingemann filed a patent application directed to a method of treating cancer by administering natural killer cells. After several years of examination, the USPTO rejected Dr. Klingemann's application on obviousness grounds. The Patent and Trial Appeal Board ("PTAB") affirmed the examiner's rejection and Nantkwest, as assignee of the application, appealed to the district court under 35 U.S.C. § 145. We have provided a summary of the technology and the proceedings at the USPTO and district court in Nantkwest's

companion appeal. *Nantkwest, Inc. v. Michelle K. Lee*, No. 2015-2095, slip op. at 2–5 (Fed. Cir. May 3, 2017).

Section 145 provides that an applicant dissatisfied with the PTAB's decision may appeal directly to the United States District Court for the Eastern District of Virginia in lieu of immediate appeal to this court. 35 U.S.C. § 145. The statute further provides that the applicant must pay "[a]ll of the expenses of the proceeding," *id.*, "regardless of the outcome," *Hyatt v. Kappos*, 625 F.3d 1320, 1337 (Fed. Cir. 2010) (en banc), *aff'd and remanded*, 132 S. Ct. 1690 (2012). After prevailing at the district court on the merits, the Director filed a motion to recover $111,696.39 of the USPTO's fees under the § 145 expense provision. *See* J.A. 84 (seeking $78,592.50 in attorneys' fees (including paralegal fees) and $33,103.89 in expert fees).[1]

Although the district court granted the USPTO's expert fees, it denied its requested attorneys' fees, citing the "American Rule." J.A. 10–11. Under this Rule, litigants pay their own attorneys' fees, win or lose, unless a statute or contract provides otherwise. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010). Applying this Rule, the court found that in order to recover these fees, "[d]efendants must be able to articulate a statutory provision that clearly and explicitly allows them to recovery attorneys' fees from Plaintiff." J.A. 3–4. The district court concluded that the "[a]ll expenses" provision of the statute was neither sufficiently specific nor explicit enough for the authorization of attorneys' fees under this

---

[1]   To arrive at this value, the USPTO calculated the pro-rata share of the salaries of the two attorneys and one paralegal who worked on the appeal. J.A. 83–84. Nantkwest did not challenge the number of hours expended or the pro-rata share of salaries the USPTO proffered at the district court. J.A. 138–40.

Rule. *Id.* On appeal, the Director argues that the district court erred by excluding the USPTO's attorneys' fees under § 145. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(C).

## II

The principal issue on appeal is whether § 145's "[a]ll expenses of the proceedings" provision authorizes an award of the USPTO's attorneys' fees under this section.[2]

We review a district court's interpretation of a statute de novo. *Weatherby v. Dep't of the Interior*, 466 F.3d 1379, 1383 (Fed. Cir. 2006). "In construing a statute or regulation, we begin by inspecting its language for plain meaning." *Meeks v. West*, 216 F.3d 1363, 1366 (Fed. Cir. 2000) (citation omitted). In the absence of a definition of a term, courts give the words their "ordinary, contemporary, common meaning." *Williams v. Taylor*, 529 U.S. 420, 421 (2000).

Under 35 U.S.C. § 145,

[a]n applicant dissatisfied with the decision of the [PTAB] . . . may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the United States District Court for the Eastern District of Virginia . . . . *All the expenses of the proceedings shall be paid by the applicant.*

---

[2]    Throughout its briefing, the Director routinely refers to these attorneys' fees as "personnel expenses." *See, e.g.*, Appellant's Br. 3. Because there is no genuine dispute that the terms "personnel expenses" and "attorneys' fees" are interchangeable within the context of this appeal, we refer to them as "attorneys' fees" throughout this opinion.

*Id.* (emphasis added).

At the outset, we observe that we have previously construed other portions of § 145. *See, e.g., Hyatt*, 625 F.3d at 1322. Although *Hyatt* resolved a different issue than the one presented here, we based our holding, in part, on our recognition of the breath of the "all expenses" provision and the substantial financial burden that applicants must bear for initiating § 145 appeals. *Id.* at 1337. "To deter applicants from exactly the type of procedural gaming that concerns the Director, Congress imposed on the applicant the heavy economic burden of paying '[a]ll the expenses of the proceedings' regardless of the outcome." *Id.* (alteration in original) (citing 35 U.S.C. § 145). Put another way, Congress intended that all applicants unconditionally assume this financial burden when seeking review directly in district court—whether they win, or lose. We thus concluded that Congress drafted this provision without requiring any degree of success on the merits (much less a prevailing party) as a necessary precedent for shifting this "heavy economic burden" onto the applicant. *Id.*

A

Before determining whether § 145 authorizes an award of the USPTO's attorneys' fees, we first address the government's argument that the American Rule does not apply to these proceedings. Like the Fourth Circuit, we have substantial doubts that this provision even implicates this Rule. *See Shammas v. Focarino*, 784 F.3d 219, 223 (4th Cir. 2015), *cert. denied sub nom. Shammas v. Hirshfeld*, 136 S. Ct. 1376 (2016) (concluding that a nearly identical statutory provision governing Trademark appeals (15 U.S.C. § 1071(b)(3)) does not "operate[] against the backdrop of the American Rule" because that provision made no reference to prevailing parties).

In response to the government's arguments, Nantkwest relies on *Baker Botts L.L.P. v. ASARCO LLC*

to support its position that the American Rule applies *whenever* a litigant seeks to recover attorneys' fees. 135 S. Ct. 2158, 2164 (2015).[3] *Baker Botts*, however, does not stand for a general proposition that courts must apply the American Rule's specific and explicit requirements to *all* fee statutes irrespective of a prevailing party as Nantkwest contends. Rather, it demonstrates that a statute must meet these requirements before a party may recover its fees when attempting to extend its reach to ancillary litigation Congress never intended. *See id.* at 2165. Nevertheless, despite our doubts as to the applicability of the American Rule here, we analyze § 145's "[a]ll expenses of the proceeding" provision assuming the Rule applies, as we conclude that even under this Rule, the expenses at issue here include the USPTO's attorneys' fees.

B

Under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Courts uniformly recognize an exception to this general proposition, however: when the statute itself "specific[ally]" and "explicit[ly]" authorizes an award of fees, the prevailing party may be entitled to collect its fees. *Id.* at 260. In agreement with

---

[3]    In that case, although the statute made no reference to prevailing parties, Congress drafted the fees provision to apply exclusively to non-adversarial bankruptcy proceedings. *Id.* at 2163–65. Nevertheless, Baker Botts used this provision as a basis to recover its fees for work it performed in a related, but adversarial, fee-defense litigation. *Id.* at 2166. By applying this statute to a proceeding Congress never contemplated in the first instance, Baker Botts effectively sought its fees in the absence of a fee statute altogether.

two other circuits, we conclude that "expenses" here includes attorneys' fees. *See Shammas,* 784 F.3d at 222–23 (holding that the term "expenses" covers the USPTO's attorneys' fees); *United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 520 (2d Cir. 1989) (observing that attorneys' fees are "expenses of the proceedings" under § 6342 of the Internal Revenue Code).[4]

1

The definitions and explanations that standard legal dictionaries and treatises provide for the term "expense" support this conclusion. *Wright & Miller* on Federal Practice and Procedure, for example, defines this term as "includ[ing] all the expenditures actually made by a litigant in connection with the action," including "attorney's fees." 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2666 (3d ed. 1998). Similarly, *Black's Law Dictionary* defines "expenses" as "expenditure[s] of money, time, *labor,* or resources to accomplish a result." *Black's Law Dictionary* 698 (10th ed. 2014) ("*Black's*") (emphasis added).

The dissent summarily dismisses these definitions, declaring that "they are not contemporaneous with Congress's introduction of the word 'expenses' into the Patent Act in 1839." Dissenting Op. 14. Relying on Nineteenth Century dictionaries instead, the dissent concludes that "the words 'expense,' 'cost,' and 'damage' were considered

---

[4]    The court in *Riverside* relied on the statutory language of this section's "expenses of the [foreclosure] proceedings" provision when awarding the Apartment Corporation its attorneys' fees. *See id.* ("The attorneys' fees incurred . . . for selling the shares . . . are in the same category as expenses of foreclosure and sale proceedings . . . .").

synonymous around the time of the 1839 Amendments."[5] *Id.* at 6. Not so. The Patent Act of 1836 specifically distinguished among these three terms. *Compare* Act of July 4, 1836, ch. 357, 5 Stat. 117, § 9 ("[M]oneys received into the Treasury under this act shall constitute a fund for the payment of salaries of the officers and clerks herein provided for, and all other *expenses* of the Patent Office." (emphasis added)), *with id.* § 14 ("[W]henever, in any action for damages for making, using, or selling the thing whereof the exclusive right is secured by any patent . . . , a verdict shall be rendered . . . , it shall be in the power of the court to render judgment for any sum above the amount found by such verdict as the actual *damages* sustained . . . , not exceeding three times the amount thereof, according to the circumstances of the case, with *costs*." (emphases added)). The historical statute that the dissent relies on simply does not support its conclusion. If anything, this statute lends support to the majority's position by expressly characterizing the salaries of USPTO officers and clerks and as "expenses." *Id.* § 9. The Supreme Court has observed the distinction between "expenses" and "costs" recently, providing an interpretation that comports with the modern definitions that the dissent disregards.

In *Taniguchi v. Kan Pacific Saipan, Ltd.*, the Court recognized the distinction between costs and fees; determining that the term "fees" includes "expenses borne by

---

[5] The dissent's position here not only lacks support in the briefing, but also directly undermines the party's position it purports to advance. Specifically, in arguing that § 145 does not include attorneys' fees, Nantkwest cited the same dictionary and definitions that the dissent now concludes bear no relevance to the interpretation of this statute. *See* Appellee's Br. 27–28 (relying on the 2014 *Black's Law Dictionary* definition for the term, "expense").

litigants for attorneys." 132 S. Ct. 1997, 2006 (2012). There, the Court distinguished "expenses" from the more limited term "costs," which represent only a fraction of expenses, relying specifically on the 1998 Wright & Miller treatise cited above.

> Although costs has an everyday meaning synonymous with expenses, the concept of taxable costs . . . is more limited . . . . Taxable costs are limited to relatively minor, incidental expenses[;] . . . such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts. . . . Taxable costs are a fraction of the *nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators.*

*Id.* at 2006 (emphasis added) (citations and quotation marks omitted). The Court provided this analysis in direct support of its holding that resolved the breadth of taxable costs under 28 U.S.C. § 1920. *Id.* at 2000, 2006. Notably, neither the dissent nor Nantkwest provide contrary authority where the Supreme Court has held that the term "expenses" categorically excludes attorneys' fees.

Nantkwest argues here that the term "expenses" lacks the requisite specificity to overcome the presumption of the American Rule that each party will pay its own attorneys' fees. Although Nantkwest does not deny that this term supplies sufficient breath to cover the USPTO's attorneys' fees, it contends that the American Rule demands more. In particular, it argues "[o]n its own, the term 'expenses' is ambiguous." Appellee's Br. 32. As support, Nantkwest relies heavily on the fact that other federal statutes under various titles illustrate that Congress has employed the term "expenses" to authorize attorneys' fees either in *addition* to expenses (e.g., "expenses *and* attorneys' fees), or as a *component* of them

(e.g., "expenses *including* attorneys' fees).[6] In other words, the term "expenses," Nantkwest contends, can either include or exclude attorneys' fees depending on the statute and, thus, the term is "far from clear." Appellee's Br. 33. Reviewing the list of statutes that Nantkwest provides, however, we conclude that Congress made clear that it meant to award attorneys' fees under the broader term "expenses" within the context of these particular proceedings.

As noted above, the ordinary meaning as defined in dictionaries and the Supreme Court's interpretation of this term lend significant weight to the conclusion that when Congress used the phrase "all expenses," it meant to include attorneys' fees. The fact that the dissent and Nantkwest compiled a list of statutory provisions for which Congress on occasion employed the term "expenses" to authorize attorneys' fees *in addition to* expenses in

---

[6]    Nantkwest cites approximately twenty such statutory provisions covering a wide range of areas of law including: bankruptcy, administrative procedure, judicial proceedings, and financial management. Appellee's Br. 32–34. Some of these statutes list attorneys' fees in addition to expenses while others list attorneys' fees as part of expenses. Roughly fifty percent of those statutes cited do not support the Appellee's view because they treat attorneys' fees as part of expenses. *Id.* The fact that the remaining provisions support Nantkwest's position is neither reliable nor significant within the context of § 145 proceedings. Similarly, the dissent provides its own list of federal statutes, more than half of which actually *support* the majority's view as well. Dissenting Op. 7–9. Notably, neither the dissent nor Nantkwest provide any indication regarding which—if any—of these cited provisions Congress enacted prior to the Supreme Court's creation of the "explicit" and "specific" criteria under the American Rule.

other contexts cannot be sufficient to dislodge the reasonable and ordinary meaning of this term. This is especially true in the context of this particular statutory provision where Congress explicitly authorized compensation for "[a]ll expenses of the proceedings." 35 U.S.C. § 145. At best, these examples demonstrate that Congress will not confine itself to a single word or phrase when referencing attorneys' fees. Yet under Nantkwest's narrow view, a statute could not meet the American Rule's heightened demands without using the precise words "attorneys' fees" or some equivalent. For example, when asked during oral argument to propose other language that Congress could have employed to satisfy the American Rule, Nantkwest cited "reasonable compensation of attorneys" as the only alternative.[7] The dissent shares this view, stating and restating that the statute cannot award attorneys' fees because Congress did not employ these exact words. *See, e.g.*, Dissenting Op. 1–2 ("Section 145 neither mentions 'attorneys' fees' nor reflects congressional intent to authorize them."); *id.* at 3 ("The phrase 'attorneys' fees' is not mentioned [in § 145] . . . .").

The Supreme Court, on the other hand, has provided other suitable alternatives without using any of these words. In *Baker Botts* for instance, the Court recognized the term "litigation costs" as one such example. 135 S. Ct. at 2164. Clearly, "litigation costs" does not include the phrase "attorneys' fees." Yet the dissent offers little to justify its conflict with the Supreme Court's conclusion that the use of the term "litigation costs" overcomes the American Rule. While a reference to a "prevailing party"

---

[7]    Oral Argument 12:42–13:17, http://oralarguments. cafc.uscourts.gov/mp3/2016-1794.mp3. We perceive no practical difference between "attorneys' fees" and the "reasonable compensation of attorneys" example Nantkwest provided.

may "usually" appear in fee-shifting statutes, *id.*, the Supreme Court has never suggested that such a reference is a requirement for fee shifting, contrary to what the dissent argues. *See* Dissenting Op. 9–10 ("Nothing in [§ 145] confines the award of expenses to a prevailing party.").

The law neither confines Congress to the use of any particular term or phrase to satisfy the American Rule's specificity requirement nor requires that Congress employ the words, "compensation," "fee," or "attorney" to meet it. The term "expenses," like "litigation costs," is another example where Congress authorized fee awards without including the words "fees" or "compensation" in the statute. Nantkwest and the dissent simply demand too much.

Our conclusion that this term authorizes the USPTO's fee award is particularly important here in the context of § 145's all expenses provision. This unique provision requires that applicants uniformly name the Director as defendant to their suits. In representing the USPTO's interests, the Director relies on personnel from the Office of the Solicitor. *See* 37 C.F.R. § 11.40(b). These attorneys—the Solicitor, his deputy, and associates—and supporting paralegals receive fixed salaries as compensation for their government work. As salaried employees, they do not bill individual hours for their work, nor do they collect fees from those whom they represent. In this context, we characterize the overhead associated with their work more precisely as an "expense" to the government than a "fee." *Compare Black's* 698 (defining "expense" as "expenditure[s] of money, time, labor, or resources to accomplish a result"), *with Black's* 154 (defining "attorney's fee" as "[t]he charge to a client for services performed for the client, such as an hourly fee, a flat fee, or a contingent fee"). Under the dissent and Nantkwest's view, Congress must use the word "fee" instead for the USPTO to receive remuneration. We do not view the American Rule so narrowly. To conclude otherwise, our

interpretation would force Congress into the untenable position of selecting a word that must be applied in an unconventional and imprecise manner in the context of these unique proceedings.[8]

Given the Supreme Court's construction of "expenses," the guidance dictionary and treatises provide on this term, and the context in which Congress applied it, we conclude that the term "expenses" includes the USPTO's attorneys' fees under § 145.

2

Nantkwest makes an additional argument regarding whether the USPTO's attorneys' fees are "expenses of the proceedings." 35 U.S.C. § 145. It contends that this provision does not provide a basis for attorneys' fees because

---

[8] Congress's contrasting use of the term "attorneys' fees" under 35 U.S.C. § 285 provides further evidence to this point. There, Congress chose not to award all expenses to the prevailing party, but only attorneys' fees. The dissent appears to ignore this distinction, instead requiring that Congress recite the phrase "attorneys' fees" to cover at least a subset of these "expenses" simply because other portions of Title 35 employ that phrase. Dissenting Op. 4–5. Put another way, under the dissent's view, Congress must rigidly employ a phrase such as "attorneys' fees and other expenses" in place of the broader term "expenses," which already includes these fees. Relying on a flawed premise, the dissent simply dismisses—even as a theory—that Congress could have intended a broader compensation scheme under § 145 than § 285. Congress indisputably has the authority to employ a broad word over other narrower alternatives if it so chooses. And it may do so irrespective of how many times it amended other portions of Title 35 or employed narrower alternatives for other sections of the Code.

the USPTO would have had to pay the portions of these full-time employees' salaries regardless of Nantkwest's suit.

We disagree. First, we have accorded similar relief in the past in the context of other salaried attorneys. In *Raney v. Federal Bureau of Prisons*, for example, we awarded salaried union attorneys an apportionment of their salaries because the litigation required the lawyers to divert their time away from other pending matters. 222 F.3d 927, 935 (Fed. Cir. 2000). Second, our sister circuits have recognized the costs associated with these diversions and awarded fees to salaried employees as well. *See, e.g.*, *Shammas*, 784 F.3d at 223 (recognizing that the USPTO "incurred expenses when its attorneys were required to defend the Director in the district court proceedings, because their engagement diverted the PTO's resources from other endeavors"); *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 365–66 (7th Cir. 2000) (holding that salaried government employees could recover their fees as they relate to the government's opposition to an improper removal of a state court case).

Section 145 proceedings similarly impact the USPTO's resources. These costs are particularly relevant here, where the USPTO attributes over seventy percent of its total expenses ($78,592.50 of the $111,696.39) to attorneys' fees. Nantkwest filed its appeal in district court and enjoyed the pro-applicant benefits of that forum. *See Hyatt*, 625 F.3d at 1336–37 (obtaining de novo review with the ability to introduce new evidence). Under Nantkwest's view, the government's recovery would be limited only to certain ad hoc expenses, e.g., printing, travel, expert witness costs, Appellee's Br. 35, while ignoring the vast majority of the expenses the USPTO incurred as the proximate cause of Nantkwest's appeal. We cannot subscribe to this view.

It cannot be credibly disputed that the USPTO dedicated time and resources of its attorneys to the defense of this litigation when it could have otherwise applied those resources to other matters. Without acknowledging these concerns, Nantkwest essentially endorses a rule that would theoretically permit an award if the USPTO retained outside counsel to defend its interests but not if it elected to proceed on its own. Logically, the meaning of "of the proceedings" cannot turn on the *type* of attorneys retained to defend the government's interests. As we previously observed, we must equally regard salaried attorneys' time and "tak[e] into account the opportunity costs involved in devoting attorney time to one case when it could be devoted to others." *Raney*, 222 F.3d at 934–35.[9] We thus conclude that § 145 entitles the USPTO to compensation for the diversion of its resources in the defense of § 145 appeals.

Accordingly, we hold that "[a]ll expenses of the proceedings" under § 145 includes the pro-rata share of the attorneys' fees the USPTO incurred to defend applicant's appeal. To conclude otherwise would conflict with *Hyatt*, where we recognized the "heavy economic burden" that § 145 shifts onto applicants for electing this favorable appellate path. *Hyatt*, 625 F.3d at 1337.

We have considered Nantkwest's remaining arguments in this appeal but find them unpersuasive as well.

---

[9] Without shouldering these expenses itself, Nantkwest seeks a ruling that essentially requires other applicants to fund its own appeal. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 10, 125 Stat. 284, 316 (2011) (recognizing the USPTO as exclusively an applicant-funded agency). Although this may be appropriate in the context of other agency proceedings, it does not accord with our requirement that the applicant *itself* must bear the burden of these appeals. *Hyatt*, 625 F.3d at 1337.

CONCLUSION

For the foregoing reasons, we reverse the district court and remand the case for it to enter an additional award of $78,592.50 in favor of the Director.

**REVERSED AND REMANDED**

# United States Court of Appeals for the Federal Circuit

---

**NANTKWEST, INC.,**
*Plaintiff-Appellee*

v.

**JOSEPH MATAL, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellant*

---

2016-1794

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:13-cv-01566-GBL-TCB, Judge Gerald Bruce Lee.

---

STOLL, *Circuit Judge*, dissenting.

Under the American Rule, "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). It erects a strong presumption against fee-shifting, requiring an explicit provision permitting a departure from the American Rule or other evidence of congressional intent to make such an award available. Section 145 neither mentions "attorneys' fees" nor reflects a congressional intent to

authorize them. Because I believe § 145 fails to provide the necessary congressional directive to overcome the American Rule's bar against shifting attorneys' fees, I respectfully dissent.

## I.

The majority expresses "substantial doubts" regarding whether the American Rule applies to § 145. Maj. Op. 5. But Supreme Court precedent makes clear that the American Rule marks the starting point for any analysis that shifts fees from one litigant to another. Often referred to as a "bedrock principle," the American Rule requires that "[e]ach litigant pay[] his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)). This presumption against fee shifting in American litigation dates back more than 200 years to *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306 (1796). "[T]he law of the United States, but for a few well-recognized exceptions not present [here], has always been that absent explicit congressional authorization, attorneys' fees are not a recoverable cost of litigation." *Runyon v. McCrary*, 427 U.S. 160, 185 (1976) (footnote omitted).

While Congress remains free to draft statutes providing for the award of attorneys' fees, any such deviation from the American Rule must be "specific and explicit," for Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260–62 (1975) (citing statutory provisions containing the phrase "attorney's fees" as examples of "specific and explicit provisions for the allowance of attorneys' fees"). Several cases have recognized that a statute's failure to reference "attorneys' fees" is not always dispositive, but the statute must "otherwise evince[] an intent to provide

for such fees." *See, e.g.*, *Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994). This necessitates resort to the ordinary meaning of the phrase that is alleged to shift attorneys' fees and the legislative history of the statutory provision to see if such an intent exists. *Id.* at 817–19; *Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 722–23 (1982).

## II.

It is against this backdrop that we analyze whether Congress expressed an intent "to set aside this longstanding American rule of law," *Runyon*, 427 U.S. at 185–86, and award attorneys' fees under § 145. In order to shift the PTO's attorneys' fees to NantKwest in this case, we must find in the text of § 145 a "specific and explicit" authorization from Congress. *See Alyeska Pipeline*, 421 U.S. at 260. Without express authority, the ordinary meaning of "expenses" or § 145's legislative history has to provide it. A searching review exposes no such authorization.

## A.

The language of § 145 does not explicitly grant us authority to shift attorneys' fees. Section 145 requires a patent applicant electing to challenge the PTO's unfavorable decision in district court to pay "[a]ll the *expenses* of the proceedings." 35 U.S.C. § 145 (emphasis added). The phrase "attorneys' fees" is not mentioned, and Congress's use of "expenses" is not the type of "specific and explicit" language that permits the award of attorneys' fees. *See Summit Valley*, 456 U.S. at 722 (noting that statute does not expressly mention attorneys' fees); *Key Tronic*, 511 U.S. at 814–15 (same); *F. D. Rich Co. v. U.S. for the Use of Indus. Lumber Co.*, 417 U.S. 116, 126 (1974) (same).

In this case, the omission of "attorneys' fees" from § 145 is particularly telling. When Congress wanted to

make attorneys' fees available in a patent litigation, it knew how to do so.  Section 285 of the America Invents Act, for example, provides: "The court in exceptional cases may award reasonable *attorney fees* to the prevailing party."  35 U.S.C. § 285 (emphasis added).  Several other sections of the Patent Act cross-reference § 285, and each of those sections recognizes the availability of "attorney fees" under § 285.  *See, e.g., id.* § 271(e)(4); § 273(f).  Similarly, Section 297 of the AIA permits a customer who has been defrauded by an invention promoter to recover "reasonable costs and *attorneys' fees*," in addition to other damages incurred by the customer.  *Id.* § 297(b)(1) (emphasis added).

It is a fundamental principle of statutory interpretation that, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)).  Congress decided to exclude "attorney fees" from § 145 but not § 285—the exact type of disparate exclusion we ordinarily presume to be intentional.[1]  The omission of attorneys' fees from

---

[1]    Congress has expressly awarded attorneys' fees in many other statutory contexts.  *See, e.g.,* 7 U.S.C. § 2565 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); 10 U.S.C. § 1089(f)(2) (recognizing that statute provides "the authority to provide for reasonable attorney's fees"); 15 U.S.C. § 1117(a) (permitting award of "reasonable attorney fees to the prevailing party" for certain trademark violations); 22 U.S.C. § 277d-21 (permitting Commissioner to "allow reasonable attorneys' fees"); 42 U.S.C.

§ 145 "strongly suggest[s] a deliberate decision not to authorize such awards." *Key Tronic*, 511 U.S. at 818–19. It reveals Congress's intent "to pick and choose among its statutes and to allow attorneys' fees under some, but not others." *Alyeska Pipeline*, 421 U.S. at 263.

Congress's knowledge of the American Rule lends even more force to this argument. At least as early as 1973, Congress formed subcommittees to study attorneys' fees and other issues affecting legal services. *See F. D. Rich Co.*, 417 U.S. at 131 & n.20. And when warranted, Congress has drafted statutes to overcome the American Rule. *See Hensley*, 461 U.S. at 429 (stating that Congress enacted Civil Rights Attorney's Fees Awards Act of 1976 in response to American Rule to provide explicit authorization for shifting attorneys' fees). As it did with the Civil Rights Attorney's Fees Awards Act of 1976, Congress could have revised § 145 to expressly provide for the award of attorneys' fees. Congress, however, did not. We should defer to Congress's decision. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.").

## B.

Because § 145 lacks specific and explicit statutory authority to shift attorneys' fees, we must be able to glean a congressional intent to do so from the ordinary meaning of "expenses" or the legislative history of § 145. The majori-

---

§ 2000e-16c(e) (stating "attorney's fees may be allowed by the court"); 46 U.S.C. § 41305(e) ("[T]he prevailing party may be awarded reasonable attorney fees.").

ty concludes that the ordinary meaning of "expenses" necessarily includes attorneys' fees.[2]  I disagree.

It is a fundamental canon of statutory construction that, "'[u]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning' at the time Congress enacted the statute." *Amoco Prod. Co. v. S. Ute Indian Tribe*, 526 U.S. 865, 873–74 (1999) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  As the Director points out in her brief, Congress amended the Patent Act in 1839 to require that "the whole of the expenses of the proceeding shall be paid by the applicant, whether the final decision shall be in his favor or otherwise."  Act of Mar. 3, 1839, ch. 88, § 10, 5 Stat. 353, 354; Appellant Br. 21.  In the 1830s, the definition of "expense" included "cost," and the definition of "cost" included "expense."  J.E. Worcester, *A Pronouncing and Explanatory Dictionary of the English Language with Pronouncing Vocabularies of Classical and Scripture Proper Names* 75, 117 (1830); *see also* Noah Webster et al., *An American Dictionary of the English Language* 197, 319 (Joseph Emerson ed., 1830) (listing definition for "expense" as "cost" and vice versa).  Moreover, the words "expense," "cost," and "damage" were considered synonymous around the time of the 1839 Amendments.  Peter Mark Roget, *Thesaurus of English Words and Phrases* 227 (Barnas Sears ed., 1856).

These definitions suggest that, at the time Congress introduced the word "expenses" into the Patent Act, its ordinary meaning did not include attorneys' fees.  The Supreme Court has twice held that the word "damages"— a synonym for "expenses" at the time of enactment—is insufficient to override the American Rule.  *See Summit*

---

[2]    The majority does not rely on the legislative history to support its position.

*Valley*, 456 U.S. at 722–23 ("Ordinarily a statutory right to 'damages' does not include an implicit authorization to award attorney's fees. Indeed, the *American Rule presumes that the word 'damages' means damages exclusive of fees.*" (emphasis added)); *Arcambel*, 3 U.S. (3 Dall.) at 306. And even the majority agrees that the word "costs" cannot displace the American Rule. *See* Maj. Op. 8–9. There can be no doubt that the ordinary meaning of "expenses" at the time of its inclusion in the Patent Act falls short of overcoming the American Rule. That the PTO did not rely on this provision to seek attorneys' fees for over 170 years supports the understanding that it is far from clear whether "[a]ll the expenses of the proceedings" includes attorneys' fees.

Congress's frequent use of "expenses" and "attorneys' fees" in other statutory provisions further reinforces that "[a]ll the expenses of the proceedings" does not necessarily include attorneys' fees. The U.S. Code is replete with examples of Congress awarding "expenses" and then separately clarifying that attorneys' fees are also available. *See, e.g.*, 11 U.S.C. § 363(n) (authorizing trustee to recover "any costs, attorneys' fees, or expenses incurred" in certain situations); 12 U.S.C. § 1464(d)(1)(B)(vii) ("[C]ourt . . . may allow to any such party reasonable expenses and attorneys' fees."); 12 U.S.C. § 1786(p) ("Any court having jurisdiction of any proceedings instituted under this section . . . may allow to any such party such reasonable expenses and attorneys' fees as it deems just and proper . . . ."); 12 U.S.C. § 5005(b)(2)(B) (providing that, in absence of breach of warranty, amount of indemnity shall be sum of "interest and expenses (including costs and reasonable attorney's fees and other expenses of representation)"); 25 U.S.C. § 1401(a) (discussing "payment of attorney fees and litigation expenses"); 26 U.S.C. § 6673(a)(2)(A) (allowing recovery of "excess costs, expenses, and attorneys' fees" against attorney who vexatiously multiplied proceedings); 15 U.S.C. § 77z-1(a)(6)

(discussing "[t]otal attorneys' fees and expenses" that can be awarded by court); 2 U.S.C. § 396 ("The committee may allow any party reimbursement from the applicable accounts of the House of Representatives of his reasonable expenses of the contested election case, including reasonable attorneys fees . . . ."); 10 U.S.C. § 2409(c)(1)(C) (permitting agency head to require that contractor pay "an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees)" in connection with complaint regarding a reprisal); 15 U.S.C. § 2310(d)(2) (permitting recovery of sum "equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended)"); 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."); 29 U.S.C. § 1370(e)(1) ("[T]he court in its discretion may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees . . . ."); 30 U.S.C. § 938(c) (allowing successful miner to recover "a sum equal to the aggregate amount of all costs and expenses (including the attorney's fees)"); 31 U.S.C. § 3730(d)(1) ("Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."); 33 U.S.C. § 1367(c) ("[A] sum equal to the aggregate amount of all costs and expenses (including the attorney's fees) . . . shall be assessed . . . ."); 38 U.S.C. § 4323(h)(2) ("[T]he court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses."); 41 U.S.C. § 4705(d)(1)(C) (noting that head of agency may "[o]rder the contractor to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that the complainant reasonably incurred"); 42 U.S.C. § 247d-6d(e)(9) (permit-

ting party to recover "reasonable expenses incurred . . . including a reasonable attorney's fee").

The message is clear: Congress did not view "[a]ll the expenses of the proceedings" as necessarily including "attorneys' fees." If "expenses" included "attorneys' fees," there would be no reason for Congress to specify the availability of attorneys' fees in statutes that already provide for the award of expenses. Instead, the logical implication is that "expenses" and "attorneys' fees" mean different things and that expenses do not necessarily include attorneys' fees. At best, Congress's reference to "[a]ll the expenses" is ambiguous. As such, Congress's intent is not clear, and the statutory language does not overcome the American Rule.

Although Congress has enacted statutes that award the government attorneys' fees in a district court action, in each circumstance, Congress explicitly referred to attorneys' fees, making its fee-shifting intent abundantly clear. For example, in the context of an agency enforcement action for assessment of a civil penalty, 42 U.S.C. § 7413(a)(5)(B) provides that "[a]ny person who fails to pay on a timely basis a civil penalty ordered or assessed under this section shall be required to pay . . . the United States enforcement expenses, including but not limited to attorneys fees." Likewise, 33 U.S.C. § 1319(g)(9)(B) provides that "[a]ny person who fails to pay on a timely basis the amount of an assessment of a civil penalty . . . shall be required to pay [the agency] . . . attorneys fees and costs for collection proceedings." Unlike these statutes, Congress's alleged intent to award attorneys' fees to the government in § 145 actions is not so clear.

Finally, if § 145 were a fee-shifting statute, it would represent a particularly unusual divergence from the American Rule because it obligates even successful plaintiffs to pay the PTO's attorneys' fees. "[W]hen Congress has chosen to depart from the American rule by statute,

virtually every one of the more than 150 existing federal fee-shifting provisions predicates fee awards on *some* success by the claimant." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983); *see also Baker Botts*, 135 S. Ct. at 2164 (recognizing deviations from American Rule "tend to authorize the award of 'a reasonable attorney's fee,' 'fees,' or 'litigation costs,' and usually refer to a 'prevailing party' in the context of an adversarial 'action.'"). Nothing in § 145 confines the award of expenses to a prevailing party. Instead, it requires the applicant to pay "[a]ll the expenses of the proceedings," which according to the majority means the applicant pays for the PTO's attorneys' fees in every § 145 proceeding. In these atypical circumstances, I think Congress's intent to award the PTO attorneys' fees in every case should have been more clear. I cannot agree that Congress used the word "expenses" to effect such an unusual departure from the American Rule—a departure that would saddle even prevailing applicants with the PTO's attorneys' fees.[3]

## C.

The maintenance of a robust American Rule also finds support in public policy. For example, uncertainty is inherent in any litigation, and "one should not be penalized for merely defending or prosecuting a lawsuit," as

---

[3]    The majority repeatedly mischaracterizes the dissent as advocating for a rigid requirement that would bar the award of attorneys' fees unless Congress invoked those exact words. *See* Maj. Op. 11, 12, 13 n.8. This is incorrect. My opinion only addresses whether the word "expenses" is a specific and explicit directive from Congress to shift attorneys' fees *or* whether § 145 otherwise signals Congress's intent to make an award of attorneys' fees available. I express no opinion as to what other words carry enough weight to displace the American Rule.

this could have a disproportionate effect in discouraging less wealthy individuals "from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967); *see also Summit Valley*, 456 U.S. at 725 ("[C]onsiderations [favoring application of the American Rule] include the possible deterrent effect that fee shifting would have on poor litigants with meritorious claims."). Independent advocacy could also be threatened, the Supreme Court warned, "by having the earnings of the attorney flow from the pen of the judge before whom he argues." *F. D. Rich Co.*, 417 U.S. at 129. Finally, if the word "expenses" in every statute or contract trumped the American Rule, then "the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration." *Fleischmann*, 386 U.S. at 718.

Here, the majority's interpretation would compel any prospective patentee who avails herself of the review afforded by § 145 to pay the PTO's attorneys' fees even if the applicant prevails and proves error by the PTO.[4] These high and uncertain costs will likely deter applicants, particularly solo inventors and other smaller entities, from pursuing review under § 145. And every § 145

---

[4]  The AIA offers two options for judicial review of a Board decision rejecting a patent application. The applicant can appeal to the Federal Circuit under § 141 or it can file a civil action in the Eastern District of Virginia against the Director of the PTO under § 145. *See Kappos v. Hyatt*, 132 S. Ct. 1690, 1694 (2012). Seeking review under § 145 offers certain benefits to the applicant, including the ability to conduct discovery and introduce additional evidence. *See id.* at 1700–01.

proceeding would involve litigation over whether the PTO's attorneys' fees were reasonable, creating an additional burden for the district court. I am not convinced that Congress intended such an outcome.

### III.

The majority's arguments to the contrary do not persuade me to conclude otherwise. The majority relies heavily on our statement in *Hyatt v. Kappos*, 625 F.3d 1320, 1337 (Fed. Cir. 2010) that plaintiffs who proceed under § 145 bear "the heavy economic burden of paying '[a]ll the expenses of the proceedings' regardless of outcome." Maj. Op. 5, 15. This observation, however, does not require that expenses include attorneys' fees. Indeed, the PTO has traditionally interpreted this statutory language to include expert fees, court reporter fees, deposition travel expenses, and printing expenses—all of which can be significant and pose a "heavy economic burden" in district court litigation.

The majority also claims that its holding is consistent with opinions from the Second and Fourth Circuits that have interpreted "expenses" to include attorneys' fees. But the rationale adopted by the majority diverges from that of the Fourth Circuit in *Shammas v. Focarino*, 784 F.3d 219 (4th Cir. 2015), and the Second Circuit's opinion in *United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514 (2d Cir. 1989) is easily distinguished.[5]

---

[5]  In addition, the majority cites to dicta in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997 (2012) as evidence that the Supreme Court has blessed its interpretation of "expenses." As described by the Court, the question presented in *Taniguchi* was whether the phrase "compensation of interpreters" includes the cost of translating written documents. The Court answered this

In interpreting a section of the Lanham Act requiring the party bringing the case to pay "all the expenses of the proceeding," 15 U.S.C. § 1071(b)(3), the *Shammas* majority[6] found the American Rule did *not* apply. *Shammas*, 784 F.3d at 223. Only after dispatching with the strong presumption against fee shifting embodied in the American Rule—a rule that the majority here assumes is applicable—was the *Shammas* court able to interpret the ordinary meaning of "expenses" to cover attorneys' fees. *Id.* at 224. Simply reaching the same result, however, does not make the majority's opinion consistent with *Shammas*. This is particularly so here because the two opinions offer conflicting views on the applicability of the foundational common law principle embodied in the American Rule.

The Second Circuit's decision in *110-118 Riverside* is inapposite because it does not address the interpretation of "expenses" in a contract or statutory provision. In-

---

question by concluding that "both the ordinary and technical meanings of 'interpreter,' as well as the statutory context in which the word is found, lead to the conclusion that § 1920(6) does not apply to translators of written materials." *Id.* at 2005. Only then did the Court explain that its holding was consistent with the "narrow scope of taxable costs," which it characterized as a fraction of the nontaxable expenses. *Id.* at 2006. It never interpreted a statutory provision containing the word "expenses" to include attorneys' fees.

6    Judge King dissented. In his view, the American Rule controls the analysis, and attorneys' fees should not be shifted because the statutory provision at issue "makes no reference to attorney's fees awards and does not reflect a Congressional intention to authorize such awards." *Shammas*, 784 F.3d at 227 (King, J., dissenting).

stead, *110-118 Riverside* dealt with an apartment corporation that incurred expenses in foreclosing a lien that the government placed on one of the apartment corporation's tenants. The government bore responsibility for foreclosing the tax lien, but the apartment corporation effectuated the foreclosure and shouldered the expenses associated with the proceeding. Because it was the government's duty to foreclose the tax lien, the court found no reason why the government should not reimburse the apartment corporation for the expenses of the foreclosure proceeding, including attorneys' fees. *110-118 Riverside*, 886 F.2d at 520. As these facts demonstrate, *110-118 Riverside* is a case where a private party performed the legal obligations of the government and was made whole for its efforts; it does not involve the interpretation of a statute in the context of adversarial litigation to determine whether Congress specifically and explicitly provided for the recovery of attorneys' fees by one party against the other based on its use of the word "expenses."

Next, the majority relies on dictionary definitions to illuminate the ordinary meaning of "expenses." The majority's dictionaries, however, are from 1998 and 2014—they are not contemporaneous with Congress's introduction of the word "expenses" into the Patent Act in 1839. Therefore, they shed no light on the ordinary meaning of "expenses" more than 175 years ago. *See Amoco Prod. Co.*, 526 U.S. at 873–74 ("'[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning' *at the time Congress enacted the statute*." (alteration in original) (emphasis added) (quoting *Perrin*, 444 U.S. at 42)). And unlike the 1998 definition from Wright and Miller, the contemporaneous definitions do not mention "attorneys' fees." *See* Section II.B, *supra*.

Finally, the majority posits that the litany of statutory provisions separately specifying both "expenses" and "attorneys' fees" demonstrates Congress's desire not to be

restricted to a single word or phrase when awarding attorneys' fees. *See* Maj. Op. 11. These statutes, in my view, compel the opposite conclusion, especially when read in light of the American Rule. As explained above, there would be no reason for Congress to provide for the award of "attorneys' fees" in numerous statutory provisions where it also permits the award of expenses if the contemporaneous, ordinary, and well-known meaning of "expenses" necessarily included attorneys' fees. Rather, in the context of § 145, the term "expenses" is ambiguous and shows no clear intent to award attorneys' fees.

## IV.

The American Rule is the starting point for our analysis, and it imposes a high bar for any litigant seeking to shift its attorneys' fees to the opposing party. Despite assuming the American Rule's applicability to this case, the majority believes § 145 provides the requisite authorization. But § 145 lacks the specific and explicit provision for the allowance of attorneys' fees, and the ordinary meaning of "expenses" fails to fill the void. I respectfully dissent.